**Grafton Leroy RINEY, Appellant,**

v.

**The STATE of Texas.**

**No. 800–99.**

Court of Criminal Appeals of Texas.

Oct. 4, 2000.

---

* Tex.Code Crim. Proc. art. 11.07, § 1.

Robert P. Abbott, Coppell, for appellant.

Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for the State.

## *O P I N I O N*

MANSFIELD, J., delivered the opinion of the Court in which McCORMICK, P.J., KELLER, WOMACK, & KEASLER, J.J., joined.

In response to the State's petition for discretionary review, we consider the continuing precedential value of *Ward v. State*, 829 S.W.2d 787 (Tex.Crim.App. 1992), and its progeny.

### *Factual and Procedural History*

Appellant, Grafton Leroy Riney, was arrested on April 7, 1996, for possession of a controlled substance. A Dallas County grand jury later presented to the trial court a two-page indictment. The first page formally accused appellant of the unlawful possession of amphetamine in an amount of one gram or more but less than four grams. The second page of the indictment contained two enhancement paragraphs. Upon presentment, the indictment consisted of four identical, attached copies. See, by analogy, Tex.R. Evid. 1001(3),(4).[1] Each copy indicated it was to be distributed to the "COURT," the "DEFENDANT/COURT," the "TEXAS DEPARTMENT OF CORRECTIONS/COURT," and the "DISTRICT ATTORNEY."

On November 1, 1996, just before trial, the State filed a Motion to Amend the Indictment, asking the trial court for permission to change the substance allegedly possessed to methamphetamine and the amount allegedly possessed to less than one gram. See Art. 28.10.[2] The State attached to its motion a photocopied duplicate of the first page of its copy of the indictment. The trial court granted the State's motion. See Art. 28.11.[3] The briefs and the court record indicate this photocopy of the State's indictment was interlineated, but the record fails to reveal who performed the physical act of interlineating that photocopy. The trial court judge, the Honorable Charles Campbell, read the changes into the record, and the amended photocopy of the indictment was incorporated into the court clerk's file. Immediately afterward, appellant and his counsel were specifically asked whether they had any objections to the amendments. Both replied they did not:

TRIAL COURT: All right. Let's take up the indictment first before we get into the motion to suppress. Mr. Lechtenberger (defense counsel), it looks like the defendant was at one time indicted for possession of amphetamine in an amount of one gram or more but less than four grams, and the State has filed a motion to amend the indictment to change amphetamine to methamphetamine and to change the amount of one

---

1. "An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it...." Tex.R. Evid. 903(3).

   "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent." Tex.R. Evid. 903(4).

2. Article 28.10 reads:

   (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than ten days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

   (b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

   (c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

3. Article 28.11 reads:

   All amendments to an indictment or information shall be made with leave of the court and under its direction.

gram or more but less than four grams to less than one gram.

Let me ask you first, Mr. Lechtenberger, do you have any opposition to the State amending the indictment.

DEFENSE COUNSEL: No, judge, we do not.

TRIAL COURT: Now, Mr. Riney (appellant), let me address you personally, sir. Under the Texas law, under Article 28.10, in the Code of Criminal Procedure, an indictment may not be amended over your objection as to form or substance. Especially if it changes the nature of the offense, which this one does. Which basically means I have to have your consent for the State to amend the indictment. Do I have your consent, sir?

APPELLANT: Yes, sir.

Appellant also expressly agreed to waive the ten day continuance offered by Article 28.10 to prepare for the newly amended indictment. Afterwards, the trial court judge formally arraigned appellant by reading from the *amended* indictment in open court, to which appellant pleaded not guilty.

The jury found appellant guilty of possession of methamphetamine, and, following pleas of true to the enhancement paragraphs, he was sentenced to five years confinement. On appeal to the Fifth Court of Appeals, appellant presented three points of error. The only point addressed by that court complained that a variance in the pleading and proof rendered the evidence legally insufficient. More specifically, appellant argued the indictment was improperly amended because only a photocopy of the State's indictment, which had been attached to the State's motion to amend, was interlineated. As a result, appellant argued, the amendment was invalid, and the evidence, therefore,

had to be measured against the original, unamended indictment. In an unpublished opinion, the Court of Appeals agreed the amendment was inadequate, writing that, while "[t]he trial court signed an order granting the State's motion to amend, ... the face of the *original* indictment was never interlined." Therefore, the court held, the evidence demonstrating appellant possessed methamphetamine was insufficient as measured against the original, unaltered version of the indictment accusing appellant of possession of amphetamine. The Court of Appeals reversed the judgment of the trial court and entered a judgment of acquittal.

The grounds granted for review in the State's petition specifically concern the adequacy of the mechanics undertaken to incorporate an amendment into the indictment. The State contends its motion and interlineated photocopy of the indictment satisfied statutory requirements and *Ward v. State*, 829 S.W.2d 787. However, should we find those efforts to amend the indictment inadequate, the State alternatively asks this Court to reconsider the continuing precedential value of *Ward*. Appellant responds that merely interlineating a *copy* of the State's original indictment was insufficient to satisfy the requirements of *Ward*, and the amended version of the indictment was, therefore, invalid. For reasons to be explained, we will overrule, in part, our decision in *Ward v. State*, reverse the decision of the Court of Appeals and remand for further consideration.[4]

### *Relevant Case Law*

■■■■ The Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses. *Cook v. State*, 902 S.W.2d 471, 475 (Tex.

---

4. We granted two additional grounds for review in this petition in which the State argues the Court of Appeals erroneously rendered its decision to acquit in violation of Article 21.19 and Rules 44.2 and 44.4 of the Texas Rules of

Appellate Procedure. Because of our disposition of the first two grounds for review, we need not address these final two grounds in this opinion, and they are dismissed as moot.

Crim.App.1995); Tex. Const. art. I, § 10.[5] "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense." Tex. Const. art. V, § 12(b). Indictment by grand jury protects citizens against arbitrary accusations by the government. *King v. State*, 473 S.W.2d 43, 45 (Tex.Crim.App.1971). An indictment is essential to vest the trial court with jurisdiction, *Cook v. State*, 902 S.W.2d at 475, and an indictment provides a defendant notice of the offense charged so that he may prepare, in advance of trial, an informed and effective defense. *Garcia v. State*, 981 S.W.2d 683, 685 (Tex.Crim.App.1998). "It has long been held that [notice of the nature and cause of the accusation] must come from the face of the indictment. Indeed, the accused is not required to look elsewhere." *Ward v. State*, 829 S.W.2d at 794. See also *Eastep v. State*, 941 S.W.2d 130, 132 (Tex.Crim.App.1997); *Labelle v. State*, 720 S.W.2d 101, 110 (Tex.Crim.App. 1986) (Article I, section 10 of the Texas Constitution mandates that notice must come from the face of the indictment); *Voelkel v. State*, 501 S.W.2d 313, 315 (Tex. Crim.App.1973). And it is not sufficient to say that the accused knew with what offense he was charged. The inquiry must be whether the charge, in writing, furnished that information in plain and intelligible language. *Benoit v. State*, 561 S.W.2d 810, 813 (Tex.Crim.App.1977).

■ Articles 28.10 and 28.11 provide the State with the opportunity to amend an indictment. However, "[n]either the[State's] motion [to amend] nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10." *Ward v. State*, 829 S.W.2d at 793. This Court has further held that the only effective means of accomplishing an amend-

ment was by interlineation; the actual, physical alteration of the face of the charging instrument. *Eastep v. State*, 941 S.W.2d at 132; *Ward v. State*, 829 S.W.2d at 794. See *Rent v. State*, 838 S.W.2d 548, 550 (Tex.Crim.App.1990) (charging instrument is not amended for purposes of Article 28.10 until actual interlineation of the original occurs).

### Analysis

■ We recognize that the doctrine of *stare decisis* should generally be followed, because it promotes judicial efficiency and consistency, it fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. *Proctor v. State*, 967 S.W.2d 840, 844–45 (Tex.Crim.App.1998). But when governing decisions of this Court are unworkable or badly reasoned, we are not constrained to follow precedent. *Id.* at 845. The instant case demonstrates that resolutely clinging to the notion that an amendment can be accomplished *only* by the physical interlineation of the original indictment provides a defendant with the opportunity to subvert a process of which he was fully aware and had affirmatively acknowledged. For this reason, requiring physical interlineation of the original as the only means to accomplish an amendment is unwarranted. Physical interlineation of the original indictment is an acceptable but not the exclusive means of effecting an amendment to the indictment. A plain and common sense reading of Articles 28.10 and 28.11 supports this determination. See *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991); Tex. Gov't Code. 311.023. Neither statute can be interpreted to direct that amendment be performed *only* by physical interlineation. It is acceptable for the State to proffer, for the trial court's approval, its amended version of a photocopy of the original indictment. If ap-

---

5. Article I, Section 10 of the Texas Constitution provides in relevant part:
    In all criminal prosecutions the accused shall have a speedy public trial by an im-

partial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. . . .

proved, the amended photocopy of the original indictment need only be incorporated into the record under the direction of the court, pursuant to Article 28.11, with the knowledge and affirmative assent of the defense. This version of the indictment would then become the "official" indictment in the case, and it would continue to state, presumably in "plain and intelligible" language, the nature and cause of the accusation. *Garcia v. State,* 981 S.W.2d at 685; *Benoit v. State,* 561 S.W.2d at 813. Such steps comply with all statutory requisites and faithfully preserve the functions of an indictment, i.e., the trial court retains its jurisdiction, and the defendant is still kept abreast of the charges against him/her and has adequate information to prepare an appropriate defense. We note that *Ward v. State* continues to stand for the proposition that "[n]either the motion [to amend] itself nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10." However, to the extent *Ward v. State,* and those case relying upon it, require physical interlineation of the original indictment as the only means to accomplish an amendment, those cases are overruled.

We now apply this holding to the case at bar. When the State produced a copy of the original indictment, it was interlineated and incorporated into the court clerk's file, all with appellant's specific knowledge and express approval. At that point, that amended portion of the indictment became the "official" indictment in the case.[6] This was the indictment appellant knew he could reference, from that point, to provide notice of the specific charge that would enable him to properly prepare his defense. Appellant and his

counsel were specifically asked whether they harbored any objections to the amendments. Both replied they did not. The trial court then formally arraigned appellant by reading the amended indictment in open court, to which appellant pleaded not guilty. Under the circumstances present in the case at bar, no error occurred in the amendment process.

As a final matter, appellant attempts to support his position by arguing that the amended copy of the indictment was inadequate because it failed to contain the valid signature of the grand jury's foreperson.[7] See Art. 21.02(9). The lack of a signature is of no consequence in this matter, and is, in fact, not essential to the validity of an indictment. *Tatmon v. State,* 815 S.W.2d 588, 589 (Tex.Crim.App. 1991); *McCullough v. State,* 425 S.W.2d 359, 360 (Tex.Crim.App.1968). The record adequately demonstrates that the indictment used to charge appellant was properly returned by a grand jury and subsequently amended without objection.

Finding no error in the amendment of the indictment in the instant case, we reverse the decision of the Court of Appeals and remand for consideration of appellant's remaining points of error.

HOLLAND, J., dissented with an opinion in which MEYERS & PRICE, J.J., joined.

JOHNSON, J., concurred in the judgment only with an opinion.

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of the court. It stands the system of justice of this state in good stead to require that there be a

---

6. We are aware this leaves open the question regarding the status of the enhancement paragraphs, which were not included in the amended version of the indictment. We offer no guidance in this matter and leave resolution of this issue to the Court of Appeals upon remand.

7. The foreperson's signature on the original indictment in this case was placed on the second page containing the enhancement paragraphs. As mentioned, a copy of this second page was not included with the State's motion to amend the indictment.

written record of any change in an indictment. As the dissent notes, interlineation on the indictment "actually reduces the potential for confusion as to which document is the legally binding indictment...." *Post*, at 569 (Holland, J., dissenting). Physical interlineation on the face of an indictment is evidence that an amendment was made and that the defendant was given notice of the alleged offense which was the subject of the trial. Such notice is a well-settled element of due process. *Rojas v. State*, 986 S.W.2d 241, 246 (Tex.Crim.App.1998). The face of the indictment is also key in assessing legal sufficiency. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997) (sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge which, *inter alia*, is authorized by the indictment). That said, I do not agree with the dissent that, in order to satisfy the concerns that the requirement of physical interlineation addresses, it must be on the *original* indictment.

If the intent of the ruling in *Ward* was to ensure proper notice to the defendant of any change in the accusations and a written record of the change, requiring that the change be made on the original indictment may be too stringent. Throughout *Ward*, the Court refers to "the indictment." Except for a footnote that discusses a prior case,[1] I can find no reference to "the original indictment." This Court also noted in *Ward* that "the legislature did not attach any technical or particular meaning to the term 'amend,' and thus we will not frustrate legislative intent by applying a hypertechnical interpretation of the term." *Ward*, 829 S.W.2d at 792. We thus may use the common understanding of "amend" as "change, correct, revise." *Id.* at 791.

Not so long ago, there was only one copy of an indictment. It was easy to distinguish between the original document and retyped, handwritten, or mimeographed copies. With the advent of photocopiers and, as in this case, carbonless pressure copies, which piece of paper is designated as the "original" is at least somewhat arbitrary. As the majority notes, our rules of evidence include in the definition of "original" "any counterpart intended to have the same effect by a person executing or issuing it." *Supra*, at 563 n. 1; Tex.R. Evid. 1001(3). A duplicate is defined as "a counterpart" and includes photocopies ("by means of photography") and carbonless pressure copies ("by chemical reproduction, or by other equivalent"). Tex.R. Evid. 1001(4). The reasons for requiring interlineation on the face of the indictment as set out in *Ward* still apply; the motion to amend and the grant of permission by the trial court to amend are the process by which an indictment may be amended, not the amendment itself. Only a physical change on the face of the indictment satisfies the requirement the defendant be apprized of the charges against him. This concern with proper written notice can be addressed by amending the face of a duplicate of the document designated as the "original indictment" and entering the amended copy into the court's record. It would be wise to date the amended copy and the "original" so that there will be a lessened probability of confusion about which version is the one to be used at trial. While it might be better for the prosecutor to re-indict when seeking to amend the indictment as to matters of substance, the language of Tex.Code Crim. Proc. art. 28.10 and, I believe, the language of *Ward* require only a physical amendment of the indictment, whether the original *or a duplicate thereof.*

In the case before us, a duplicate of the pertinent part of the indictment was physically amended on its face and included in the court's file. Appellant was present in

---

1. *Ward*, 829 S.W.2d at 789–90 n. 4 ("In *Bartley* [ *v. State*, 789 S.W.2d 288 (Tex.App.—Dallas 1990, pet. ref'd) ] ... No interlineation was made on the indictment, and only the original indictment was included in the transcript.").

court at the time of the amendment and raised no objection to the amendment, even after questioning by the trial court. The intent of *Ward* and of the statute to provide proper notice and a written record of the amendment were fulfilled. Appellant can show no harm or surprise from the changes. He should not now be heard to complain.

Because I believe that *Ward* requires physical interlineation on the face of the charging document, but permits amendment by physical interlineation on the face of a duplicate of the charging document, which is then entered in the court's file, I concur only in the judgment of the Court.

HOLLAND, J., delivered a dissenting opinion in which MEYERS and PRICE, JJ., joined.

Today the majority overrules *Ward v. State*, 829 S.W.2d 787 (Tex.Crim.App. 1992), to the extent that it requires physical interlineation of the original indictment as the only means to accomplish an amendment. *See supra* at 565–66. Because the instant case "provides a defendant with the opportunity to subvert a process of which he was fully aware and had affirmatively acknowledged," the majority impliedly concludes that the physical interlineation requirement described in *Ward* is "unworkable" or "badly reasoned." *Id.* at 565. Apparently, the majority believes that principles of *stare decisis* should not be adhered to in this case. Because I do not find the majority's reasons for overruling *Ward* compelling, I respectfully dissent.

As the majority recognizes, "the doctrine of *stare decisis* should generally be followed, because it promotes judicial efficiency and consistency, it fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Ante.* at 565 (citing *Proctor v. State*, 967 S.W.2d 840, 844–45 (Tex. Crim.App.1998)). "Often it is better to be consistent than right." *Malik v. State*, 953 S.W.2d 234, 236 (Tex.Crim.App.1997).

The interest in *stare decisis* is even more compelling when the rule of law involves a judicial interpretation of a legislative enactment on which parties rely for guidance. *See Busby v. State*, 990 S.W.2d 263, 267 (Tex.Crim.App.1999). "When the Legislature meets, after a particular statute has been judicially construed without changing the statute, we presume the Legislature intended the same construction should continue to be applied to that statute." *Id.* (quoting *Marin v. State*, 891 S.W.2d 267, 271–72 (Tex.Crim.App.1994)).

There are acceptable reasons for overruling precedent, however. For example, "[w]hen older precedent conflicts with a newer decision that is found to be more soundly reasoned, we may resolve the inconsistency in favor of the more soundly reasoned decision." *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Crim.App. 1998). Another factor to consider is whether the reasoning underlying the older precedent has been undercut by the passage of time. *See id.* Further factors that support the overruling of precedent include: 1) when the original rule of law is flawed from the outset; 2) when the rule produces inconsistency and confusion in the law; 3) when the rule consistently creates unjust results or places unnecessary burdens upon the system; and 4) when the rule creates differences between criminal and civil practice when a reason for the difference does not exist. *See State v. Toney*, 979 S.W.2d 642, 645–46 (Tex.Crim.App.1998) (Keller, J., concurring).

In analyzing the precedential value of *Ward*, it should first be emphasized that the Texas Legislature has not changed the wording of either Art. 28.10 or Art. 28.11 of the Texas Code of Criminal Procedure since *Ward* was decided. *See* TEX.CODE CRIM. PROC. ANN. Art. 28.10 & Art. 28.11. This weighs heavily in favor of retaining *Ward*, as the Legislature has had opportunities to change the statutes and has not done so. *See Busby*, 990 S.W.2d at 267. If the Legislature had not approved of this

Court's interpretation of the statutes in *Ward*, it could have re-written the statutes. Instead, the statutes remain as they were in 1992, and the rule of law in *Ward* has been consistently relied upon by this Court and other courts. *See Eastep v. State*, 941 S.W.2d 130, 132 (Tex.Crim.App. 1997); *White v. State*, 890 S.W.2d 69, 71 (Tex.Crim.App.1994); *Bates v. State*, 15 S.W.3d 155, 161 (Tex.App.—Texarkana 2000); *Westfall v. State*, 10 S.W.3d 85, 91 (Tex.App.—Waco 1999); *Richardson v. State*, 973 S.W.2d 384, 388 (Tex.App.— Dallas 1998); *Brooks v. State*, 921 S.W.2d 875, 877 (Tex.App.—Houston [14 th Dist.] 1996); *Dixon v. State* 932 S.W.2d 567, 571 (Tex.App.—Tyler 1995); *Miller v. State*, 909 S.W.2d 586, 588 (Tex.App.—Austin 1995); *Collins v. State*, 890 S.W.2d 893, 896 (Tex.App.—El Paso 1994); *Blount v. State*, 851 S.W.2d 359, 365 (Tex.App.— Houston [1 st Dist.] 1993); *McFarland v. State*, 834 S.W.2d 481, 483 (Tex.App.— Corpus Christi 1992).

In its brief, the State argues that the *Ward* court erroneously adopted a dictionary definition of "amend." Assuming, *arguendo*, that this assertion is correct[1], the State does not show this definition of "amend" produces inconsistency or confusion within the amendment process. Further, the State does not show how the *Ward* rule of law places any unnecessary burdens upon the legal system. *Ward* does not conflict with newer, more sound law. And the *Ward* precedent has not been undercut by the passage of time.

While the majority believes *Ward* allows this appellant "the opportunity to subvert a process of which he was fully aware and had affirmatively acknowledged," the majority does not demonstrate that the *War-*

*d* rule of law *consistently* produces unjust results. Rather, *Ward* provides a clear standard for amending indictments—one in which the State and defendants can invariably rely upon.[2] Interlineation of the original indictment found in the court clerk's file actually *reduces* the potential for confusion as to which document is the legally binding indictment in a pending case. Therefore, I believe that the doctrine of *stare decisis* requires this Court to refrain from overruling any part of *Ward*, and I would continue to hold that physical interlineation of the original indictment is the only way to accomplish an amendment.

According to *Ward*, the indictment in the instant case was not properly amended. Therefore, the original indictment, which alleged that appellant possessed "amphetamine" in the amount of one gram or more but less than four grams, is the valid indictment. At trial, the State introduced evidence that appellant was arrested with "methamphetamine." This evidence does not support appellant's conviction as alleged in the indictment. Therefore, I would affirm the court of appeals's judgment of acquittal in this case. Because the majority does not do so, I respectfully dissent.

1. The *Ward* court held that the dictionary definition of "amendment" was consistent with the Legislature's intent. *Ward*, 829 S.W.2d at 792 (stating that because the Legislature did not testify regarding the amendment process, we should not "frustrate legislative intent by applying a hypertechnical interpretation to the term."). The court also found the definition of "amend" to be con-

sistent with Article I, section 10 of the Texas Constitution. *See id.* at 795.

2. The majority appears to notice this clear standard by "strongly encourag[ing] ... any amendment via interlineation to be performed upon the copy of the indictment already present in the court clerk's file."