IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00073-CR

 

Ex parte
Daniel Lee Ainsworth

                                                                                    

 

 



From the County Court

Robertson County, Texas

Trial Court No. 03-380CR

 



memorandum  opinion



 

In an April 18, 2007 Abatement Order, we abated this
appeal with directions for the trial court to conduct any necessary hearings,
make appropriate findings and recommendations, and have a record of the
proceedings prepared.  The supplemental clerk’s record includes the State’s
motion to dismiss on the ground that Appellant Daniel Lee Ainsworth’s underlying
judgment and sentence are void.  The trial court granted the State’s motion and
dismissed the criminal action against Ainsworth.  Accordingly, Ainsworth’s
appeal, which is now moot, is dismissed.

PER CURIAM

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Appeal
dismissed

Opinion
issued and delivered on November 14, 2007

Do
not publish

[CR25]






                           Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2001-893-C
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      After a jury trial, Milton Cosby was convicted of retaliation against a police officer and
sentenced to twenty years’ imprisonment. Cosby brings four issues on appeal: (1) was the
evidence factually sufficient to support the retaliation conviction?; (2) did the trial court err by
excluding evidence of the victim’s sexual relationships with younger women?; (3) was Cosby’s
right to due process violated by the destruction of a videotape taken while Cosby was being
booked at the jail?; and (4) did the trial court err by allowing the State to amend the indictment
on the day of trial? Finding the evidence factually sufficient, and answering the remaining
questions “no”, we will affirm the judgment.
BACKGROUND
      On the afternoon of July 19, 2001, Mart, Texas police officer Jo Jo Chavez encountered 
Cosby in a convenience store. Chavez was off-duty and wearing civilian clothes. Cosby, who
was holding a golf club, approached Chavez and taunted him, with rhyming or rapping language. 
Although Chavez did not understand everything Cosby said, he testified that he heard Cosby say,
“[T]here’s Jo Jo, what’s he going to do this time; he can’t do nothing.”
      Later that night, Chavez was called to duty to respond to a disturbance involving Cosby and
his wife, Deborah. Deborah told Chavez that she and Cosby were separated and that Cosby had
smashed the rear window of her car. Chavez decided to file a criminal mischief charge against
Cosby, requested backup, and located Cosby, walking towards “town”, i.e., eastbound on Texas
Avenue, between Falls Street and Waco Street in Mart. When Chavez stopped to talk to him,
Cosby, who was carrying the shaft of a golf club, backed away, telling Chavez to “come at him
like a man.”
      When backup arrived, Cosby ran, but was eventually taken into custody. Cosby then became
agitated and shouted profanities at Chavez. Russell Kirkland, a McLennan County Sheriff’s
Department field deputy, who had responded to Chavez’s request for assistance, transported Cosby
to the detention center, at Cosby’s and Chavez’s request.


 Officer Shawn Nixon, of the McLennan
County Sheriff’s Department, testified that Cosby was calm when outside the presence of Chavez,
but continued his verbal attack on Chavez while being booked at the jail.
      At the jail, Cosby’s verbal attacks intensified, and he threatened to kill Chavez. Because the
officers initially anticipated that they might use force against Cosby, a recording of his behavior
and statements was made during the booking process. In accordance with sheriff’s department
policy, the videotape was reused because no physical force was used against Cosby.
FACTUAL SUFFICIENCY
      Cosby’s first issue is that the evidence was not factually sufficient to support the conviction. 
In reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption
that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim.
App. 1997). We must view all the evidence without the prism of the “in the light most favorable
to the prosecution” construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
We ask “whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Goodman
v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may “believe all, some, or none of the testimony.” Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      Cosby argues that he threatened Chavez because of Cosby’s feelings about Chavez’s behavior
as a private citizen. In support of this argument he points to Chavez’s testimony that Cosby called
him a “perverted mother-f-----, child molester.” In addition, a recording made from inside
Chavez’s patrol car, which was admitted and played for the jury, captured statements Cosby made
at the time of his arrest. Cosby’s verbal attack, a vitriolic stream of profanities, included
statements accusing Chavez of having relationships with high school girls, questioning his
nationality, and alluding to Chavez’s previous arrest of Cosby’s niece.



      Chavez testified that Cosby glared at, cursed at, and threatened him at the jail, while Chavez
completed the booking paperwork. Chavez said, “I heard him state that when he gets out of jail,
I had better have my bullet-proof vest on and wear a bullet-proof helmet.” Chavez also testified
that Cosby threatened “that next time I went to arrest him and drew down on him, that I would
be dead,” and “he hoped that I saw him in my dreams, and when I woke up he would be right
there in my face paralyzing my ass.”
      Officer Mark Norris, a Mart police officer who participated in Cosby’s arrest, testified that
Cosby initially ran from police. Norris also heard Cosby’s cursing at the scene of his arrest,
however, he did not go to the jail with Cosby and the others.
      Shawn Nixon, a McLennan County Sheriff’s Department field deputy, was one of the officers
who assisted Chavez. He participated in Cosby’s arrest and witnessed Cosby threaten Chavez. 
Nixon testified that Cosby was agitated, upset, and cursing heavily at the time he was arrested. 
He said that Cosby continued cursing, and kicked and hit the door when he was placed in Chavez’s
patrol car. Nixon said that Cosby made “quite a few” statements to Chavez while being booked
at the jail, specifically that “Officer Chavez should have a bullet-proof vest and bullet-proof helmet
on when he got out,” and, “I’ll be in your dreams; I’ll be by your bed; when you wake up, you’ll
be dead.” At the time these statements were made, Chavez was filling out paperwork and was
dressed in an off-duty police uniform that was marked “police.” On the other hand, Nixon
acknowledged that Cosby showed proper respect to him and to everyone other than Chavez.
      Russell Kirkland, a field deputy for the McLennan County Sheriff’s Department, also assisted
Chavez that night. He testified that he transported Cosby to the jail because Cosby became
agitated while waiting in Chavez’s car. He said that Cosby threatened to kill Chavez and he would
have felt threatened if Cosby’s statements had been directed to him. He remarked that Chavez
appeared nervous and scared after Cosby threatened to kill him.
      J.C. Riggs, a corporal at the McLennan county jail, who was present during Cosby’s intake,
testified about the events of that night. He said that Cosby shouted profanities while in the holding
cell, and told Chavez, “you better put a steel plate on your back; I’ll get you when I get out.” 
While the property officer counted Cosby’s money, Cosby picked up his change and threw it in
the trash can. In fact, because of Cosby’s behavior, Riggs filed a written incident report. He, too,
testified that he would have felt threatened if Cosby’s statements had been directed to him.
      Finally, Patricia Carrillo testified. She is a booking technician for the McLennan County
Sheriff’s Department, who videotaped Cosby the night he was booked. She described Cosby as
loud, screaming, and angry. She said he screamed foul things and cursed at everybody, but noted
that he directed his language to Chavez. Because there was no physical force or violence used,
and in accordance with departmental policy, she explained, the videotape was eventually reused.
      Having reviewed the evidence at trial, we find that the proof of guilt is not so obviously weak
as to undermine confidence in the jury’s determination, nor is it greatly outweighed by contrary
proof. Johnson, 23 S.W.3d at 11; see also Goodman, 66 S.W.3d at 285. Accordingly, we
overrule Cosby’s first issue.
EXCLUSION OF EVIDENCE
      Cosby’s second issue asserts that the trial court erred by excluding evidence of Chavez’s
relationships with younger women, thus violating Cosby’s due process rights. A trial court’s
ruling concerning the admission or exclusion of evidence may not be disturbed on appeal unless
an abuse of discretion is shown. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). 
Such a ruling should be upheld if it is “within the zone of reasonable disagreement,” and it should
not be disturbed on appeal if it is correct on any theory of law applicable to the case. Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (opinion on reh’g) (zone of reasonable
disagreement); Jones v. State, 833 S.W.2d 118, 125 (Tex. Crim. App. 1992) (correct on any
theory of law applicable to the case).
      Outside the presence of the jury, Cosby’s attorney questioned Chavez regarding his
relationships with younger women. Chavez testified that he was twenty-five years old and that
he had had sexual relationships with several women whom Cosby’s attorney named specifically. 
Each woman was above the age of consent at the time of the relationship, although two of them
were several years younger than Chavez. Chavez also said that another woman, with whom he
had never had a sexual relationship, started a rumor in Mart that Chavez had fathered her child. 
Cosby sought to introduce this testimony to show that his dislike of Chavez, and the death threats,
stemmed from Chavez’s alleged bad reputation in Mart for having intimate relationships with
underage women. Cosby’s attorney then asked the following question.
DEFENSE ATTORNEY:       Why would Mr. Cosby call you a perverted mother-f----- if that
wasn’t the case, that you had had these relationships? It’s a well-known fact in Mart.
 
CHAVEZ:   It’s his feeling; he doesn’t like me. A lot of females seem to like me and they talk
about me; I can’t help what other people say. I have recently heard that I have a kid;
I just heard that.

      Although the judge excluded the questions that dealt with specific instances of Chavez’s
conduct, Cosby’s attorney was permitted to ask Chavez what names Cosby called him and why
Chavez thought Cosby would call him such names.



DEFENSE ATTORNEY:       Do you know why Mr. Cosby would have those feelings about
you, sir?
 
CHAVEZ:   No.
DEFENSE ATTORNEY:       You have no reason to know that?
 
CHAVEZ:   No.
      At a conference outside the presence and hearing of the jury, Cosby complained that Chavez
did not give the same answer that he had given in chambers. Cosby sought to elicit the answer
that Cosby’s dislike for Chavez is due to Chavez’s numerous amorous affairs with younger
women. The State objected that such testimony would be speculative, and the judge sustained the
objection.
      Cosby’s brief does not make clear whether his complaint is that the court excluded questions
about specific instances of Chavez’s conduct or that the court sustained the State’s objection to
speculative testimony. However, because both complaints are meritless, we find the distinction,
like the proffered evidence, to be irrelevant.
      Rule 401 of the Rules of Evidence defines relevant evidence as “evidence having any tendency
to make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.” Tex. R. Evid. 401. Chavez’s
consensual sexual relationships do not have a tendency to prove that Cosby’s death threats were
motivated by Cosby’s subjective feeling that Chavez was a “child molester.” Under Rule 402,
evidence that is not relevant is inadmissible. Id. 402. Therefore, we find no error in the court’s
exclusion of questions about specific instances of Chavez’s conduct.
      Moreover, under Rule 602, “[a] witness may not testify to a matter unless evidence is
introduced sufficient to support a finding that the witness has personal knowledge of the matter.” 
In chambers, the prosecutor asked Chavez, “Do you know for a fact why Mr. Cosby has referred
to you as a perverted mother-f-----, or can you only speculate?” Chavez replied that he could only
speculate. Given this record it is clear that Chavez lacked personal knowledge to testify to
Cosby’s subjective motivations. We find no error in the court’s exclusion of this testimony and
find that the court properly sustained the State’s objection.
       Having found no error, we can find no deprivation of due process. Cosby’s second issue is
overruled.
DUE PROCESS AND THE VIDEOTAPE
      In his third issue, Cosby claims that his due process rights were violated by the State’s
destruction of a videotape which would have established what actually happened at the jail. To
preserve a complaint, a request, objection or motion must be made to the court in a timely fashion. 
Tex. R. App. P. 33.1(a)(1); Wilson v. State, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). To be
timely, a complaint must be made as soon as the grounds are apparent or should be apparent. 
Wilson, 7 S.W.3d at 146. The record shows that several witnesses testified at trial on December
11, 2001, that a videotape was made during Cosby’s intake at the jail. However, the prosecution’s
failure to disclose this was not raised until January 3, 2002, in Cosby’s motion for new trial,
which was denied on January 13, 2002. Thus his complaint is untimely, and it has not been
preserved for our review. See Wilson, 7 S.W.3d at 146. Accordingly, we overrule this issue.



CHANGING THE INDICTMENT
      Cosby’s fourth and final issue notes that the court allowed the State to strike the word “as”
from the indictment, over Cosby’s objection, on the day trial began. He argues that he was
harmed by this because it lowered the State’s burden of proof. After this change, the relevant part
of the indictment read as follows:
 . . . Milton Cosby, hereinafter styled Defendant, heretofore on or about the 19th day of July,
A.D. 2001, and before the presentment of this indictment, in the County and State aforesaid,
did then and there intentionally or knowingly threaten to harm another, to-wit: Jo Jo Chavez
by an unlawful act, to-wit: to kill him, in retaliation for or on account of the service or status
of Jo Jo Chavez a as public servant.

(Emphasis added). Cosby contends that the change was an amendment that negated the State’s
burden to prove that Jo Jo Chavez was a public servant. We disagree.
      Not every alteration to an indictment is an amendment. Eastep v. State, 941 S.W.2d 130, 132
(Tex. Crim. App. 1997), overruled on other grounds by Riney v. State, 28 S.W.3d 561 (Tex.
Crim. App. 2000). An alteration to an indictment that affects its substance is an amendment. Id. 
An alteration that does not affect the substance of the indictment is considered an abandonment,
even when accomplished by an actual, physical alteration to the face of the charging instrument. 
Id. at 133. One type of abandonment is the deletion of surplusage. Id. at 134. Surplusage is
unnecessary language not legally essential to constitute the offense alleged in the charging
instrument. Id.
      Under the facts of this case, we find the word “as” to be surplusage. Because the deletion
of surplusage is an abandonment and not an amendment, this alteration is not subject to the
amendment provisions of the Code of Criminal Procedure, and we know of no prohibition to
making such a change on the day trial commences. Id. at 135; Tex. Code Crim. Proc. Ann.
arts. 28.10; 28.11. Accordingly, the court did not err in permitting the alteration to be made. We
overrule Cosby’s fourth issue.
CONCLUSION
      Having overruled each of Cosby’s issues, we affirm the judgment.
 
                                                                   BILL VANCE
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and 
      Justice Gray
Affirmed
Opinion delivered and filed March 12, 2003
Do not publish
[CR25]