In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00141-CR**
_____

**ELIZABETH ANNETTE DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 26,524**
_____

**MEMORANDUM OPINION**

In Texas, a person commits a felony if she takes or retains a child knowing the conduct violates the express terms of a judgment or order disposing of the child's custody.[1] In May 2019, a jury found Elizabeth Annette Davis guilty of knowingly violating the law by interfering with two orders, signed by Judge Tom Brown on December 12, 2017, the presiding judge of the County Court at Law of Polk County,

---

[1]Tex. Penal Code Ann. § 25.03(a)(1), (d).

Texas. The indictment did not specify which of the two orders Davis allegedly violated, but Judge Brown did sign two SAPCR orders concerning a child named *Amy* on December 12.[2] Davis appealed and filed a brief raising two issues for our review. For convenience, we address Davis's second issue first. In issue two, Davis argues the evidence is insufficient to support the jury's verdict finding that she *knowingly* violated the terms of Judge Brown's December 12 orders. In Davis's other issue, which we need not reach to decide her appeal, she argues the evidence is insufficient to show she violated the requirements Judge Brown established in either of his December 12 orders.[3]

Having reviewed the evidence and the briefs, we sustain issue two because the evidence fails to show Davis knowingly violated the express terms of the December 12 orders. We reverse the trial court's judgment in trial court cause number 26,524 and render a judgment of acquittal.

## Background

In January 2019, a Polk County grand jury indicted Davis for interfering with a December 12 custody order in a proceeding initiated by Kade Burman, Amy's father, to address Burman's and Davis's custody rights as they relate to Amy. The

---

[2]We use the pseudonym *Amy* to protect the identity of the child who is identified with her name in the indictment.

[3]Tex. R. App. P. 47.4. (when issuing a memorandum opinion, the court should write an opinion "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

2

Polk County District Attorney obtained an indictment from a Polk County grand jury after Burman filed a report claiming Amy was missing. The indictment in Davis's case alleges that Davis, on or about October 19, 2018, took or retained Amy when Davis "knew that this taking and retention violated the express term of a judgment and of a court disposing of a child's custody, entered on December 12, 2017 . . . disposing of [Amy's] custody."

Four witnesses testified in Davis's trial: Burman, Beau Bartel, Rickie Childers, and Yaneldy Merino. Bartel arrested Davis in Mobile, Alabama in November 2018 after locating Davis and Amy there while he carried out his duties as a U.S. Marshal. Childers is a Captain with the Polk County Sherriff's Office. Childers handled the investigation the Sheriff's Office conducted into Burman's complaint alleging Amy was missing. Merino is a clerk who works for Polk County. Her duties include filing and maintaining records and orders in lawsuits filed in Polk County.

During the trial, Burman testified he and Davis began dating in September 2015. Amy was born about a year later. In late October 2017, while Burman and Davis were living together in Florida, they separated. In late October or early November 2017, Burman returned to Texas, his home, leaving Amy with Davis in Florida. In November 2017, Burman sued Davis in a SAPCR proceeding in Polk County, asking the trial court to name him as Amy's sole managing conservator.

Merino, the court clerk, identified several orders Judge Brown signed in the SAPCR, including four orders that he signed in November 2017 and two that he signed on December 12. Before admitting the December 2017 orders, they were marked as Exhibits 7 and 8 in Davis's trial. Exhibits 7 and 8 were then admitted without objection. Exhibit 7 are the SAPCR Court's temporary orders, while Exhibit 8 is a writ of attachment. None of the testimony or exhibits from Davis's trial reflect that Davis was served or sent copies of either December 12 order. There is also no evidence showing that Davis knew what the orders signed on December 12, 2017 required.[4]

Relying on a warrant issued for Davis's arrest, Bartel located and then arrested Davis in Mobile, Alabama on November 19, 2018.[5] When Bartel found Davis, Amy was with her. Marshal Bartel turned Amy over to the Alabama Department of Human Resources. Later, the Alabama Department of Human Resources released Amy to Burman.

---

[4]Davis did not testify in the trial. U.S. Marshal Bartel, Captain Childers, Burman, and Merino were never asked whether Davis acknowledged knowing what was required of her by the orders Judge Brown signed on December 12.

[5]U.S. Marshal Bartel testified he did not have a copy of the arrest warrant with him at Davis's trial. The arrest warrant was also never introduced into evidence during the trial. We assume, however, the arrest warrant authorizing Davis's arrest was issued by a magistrate in Polk County based on the indictment charging Davis with interfering with child custody orders signed by Judge Brown.

## Standard of Review

Evidence is sufficient to support a conviction if a rational jury could find the defendant committed each essential element of the offense beyond reasonable doubt.[6] When reviewing the evidence in an appeal, we consider the evidence the trial court admitted during the trial "in the light most favorable to the verdict."[7] We defer to the role the jury had as the "sole judge of the credibility of a witness's testimony and the weight to assign to that testimony" when conducting our review.[8] In its role of resolving any factual issues in the case, the "jury can believe all, some, or none of a witness's testimony."[9] While a jury may draw reasonable inferences from the evidence it hears in the trial, each inference must be "supported by the evidence produced at trial."[10] "If the record supports contradictory reasonable inferences, we presume that the jury resolved the conflicts in favor of the verdict."[11] If the reviewing court determines the evidence is insufficient to support the conviction, it must reverse the judgment and order the defendant acquitted.[12]

---

[6]*Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).
[7]*Id.*
[8]*Id.*
[9]*Id.*
[10]*Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 19 (1979); *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).
[11]*Metcalf*, 597 S.W.3d at 865.
[12]*Tibbs v. Florida*, 457 U.S. 31, 41 (1982); *Garcia v. State*, 367 S.W.3d 683, 686-87 (Tex. Crim. App. 2012).

When measuring the evidence, we look to the elements of the offense as defined by a hypothetically correct charge.[13] In Davis's case, a hypothetically correct charge requires that the State, prove—beyond reasonable doubt—that Davis (1) took or retained Amy (2) when Davis knew that taking or retaining Amy violated the express terms of the December 12 orders.[14]

Analysis

Our resolution of Davis's appeal hinges on whether the evidence is sufficient to allow reasonable jurors to find that Davis *knowingly* violated the SAPCR Court's December 12 orders. Under the Texas Penal Code, a person acts *knowingly* "or with knowledge, with respect to the nature of [her] conduct or to circumstances surrounding [her] conduct when [she] is aware of the nature of [her] conduct or that the circumstances exist."[15] The exhibits admitted during Davis's trial reflect that Judge Brown signed two orders in Burman's SAPCR on December 12, 2017. Yet, when he argued the State's case to the jury, the prosecutor asked the jury to consider

---

[13]*Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018) (A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.") (cleaned up).

[14]*See* Tex. Penal Code Ann. § 25.03(a)(1) ("A person commits [interfering with child custody] if the person takes or retains a child younger than 18 years of age…when the person knows that the person's taking or retention violates the express terms of a judgment or order, including a temporary order, of a court disposing of the child's custody[.]").

[15]*See id.* § 6.03(b).

whether Davis violated the requirements in any of the SAPCR orders, some of which were not signed by Judge Brown on December 12. For example, in final argument, the prosecutor argued the evidence showed Davis violated Judge Brown's November orders, which were orders she was charged with violating. In these orders, Davis was required to appear for a hearing before Judge Brown on November 29. The State proved that Davis failed to appear for that hearing. Additionally, the State proved that Davis was served with copies of the orders that Judge Brown signed in November 2017.

Yet the record also shows the State never asked the trial court in Davis's criminal case for leave to amend Davis's indictment to allow the State to charge her with knowingly violating Judge Brown's November 2017 orders. And the State cannot hold Davis criminally responsible based on her violation of orders never mentioned in her indictment. The reasons it cannot do so is that "[t]he Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses."[16] Indictments give the defendant fair notice of the offenses on which they are charged so the defendant "may prepare, in advance of trial, an

---

[16]*Riney v. State*, 28 S.W.3d 561, 564 (Tex. Crim. App. 2000); Tex. Const. art. I, § 10.

informed and effective defense."[17] Article I, section 10 of the Texas Constitution also requires the State to indict the defendant in cases that involve a felony.[18]

Articles 28.10 and 28.11 of the Code of Criminal Procedure explain when trial courts may amend indictments at the State's request.[19] Since Davis's indictment does not charge Davis with violating the SAPCR Court's November 2017 orders, the State cannot rely on evidence showing Davis violated those orders to prevail against the challenges to the judgment Davis raised in her appeal.[20] Thus even though Davis violated one or more of Judge Brown's November 2017 orders, evidence showing she violated those orders is not evidence that proves she knowingly violated the orders that are identified by date in Davis's indictment.

Boling it down, we find the record contains no evidence that Davis knowingly violated Judge Brown's December 12, 2017 orders. For that reason, we conclude no rational trier of fact could have found that Davis acted *knowingly* based on the evidence the jury heard in Davis's trial in violating the orders her indictment charged her with having violated. Since we have decided Davis is entitled to prevail on her

---

[17]*Riney*, 28 S.W.3d at 565.

[18]Tex. Const. art. I, § 10; *see Labelle v. State*, 720 S.W.2d 101, 110 (Tex. Crim. App. 1986).

[19]Tex. Code Crim. Proc. Ann. art. 28.10-.11.

[20]*Id.* art. 28.11.

second issue, we need not decide whether she is also entitled to prevail on the argument she raises to support her first issue.[21]

## Conclusion

For the above reasons, we reverse the judgment of the trial court and render a judgment of acquittal.[22]

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on January 25, 2021
Opinion Delivered May 5, 2021
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[21]*See Jackson*, 443 U.S. at 320.
[22]*See* Tex. R. App. P. 43.2(c) (authorizing appellate courts to "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered").