

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00150-CR
_____

JOSE NORBERTO GONZALEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CR2023-1055

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Jose Norberto Gonzalez appeals his conviction for repeatedly violating a protective order. *See* Tex. Penal Code Ann. §§ 25.07, 25.072. In three issues, Gonzalez argues that (1) the State failed to amend the indictment, (2) the evidence is insufficient to support his conviction under the original indictment, and (3) even if the State amended the indictment, the amended indictment does not contain the required language, "In the Name and By the Authority of the State of Texas" as required by the Texas Code of Criminal Procedure. We will affirm.

## I. Background

After his conviction for repeatedly violating a protective order issued to protect F.G. (Flora),[1] Gonzalez moved the trial court to set an appeal bond. We affirmed the trial court's denial of that motion. *Gonzalez v. State*, No. 02-24-00120-CR, 2024 WL 3897173 at *1 (Tex. App.—Fort Worth Aug. 22, 2024, no pet). In our prior opinion, we summarized in detail the evidence from the trial. *Id.* at *1–4. In this opinion, we will discuss only the evidence relevant to the issues on appeal.

After an altercation on the morning of May 19, 2023, for which Gonzalez was arrested, Flora filed a protective-order application. On May 22, 2023, Judge Gary Butler, sitting for the 89th District Court, signed a temporary ex parte protective order

---

[1]We use an alias to refer to the complainant. *See* Tex. R. App. P. 9.8 cmt.; 2d Tex. App. (Fort Worth) Loc. R. 7; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

that was served on Gonzalez (who was still in jail at that time). Among other things, the temporary order prohibited Gonzalez from committing family violence against Flora and her household[2] and family members, from directly communicating with her and her household and family members, and from going within 100 yards of Flora's residence.

On May 26, 2023—four days after Judge Butler signed the protective order—Gonzalez went to Flora's home while she was not there because he wanted to take a shower. Flora's son called the police, and when they arrived, they found Gonzalez hiding in one of the children's bedrooms. Gonzalez acknowledged that he was aware of the protective order, and the police placed him under arrest for violating that order.

On June 3, 2023, while Gonzalez's mother and some of the children were at the couple's home, Flora—through one of the children—gave Gonzalez permission to come there under the condition that he stay outside. When Gonzalez arrived, he kicked the home's locked front door and demanded that Flora open it. One of the children opened the door, told Gonzalez that Flora did not want him to come inside, and pushed him away from the door. One of the other children called the police. When a police officer arrived, Gonzalez told the officer that he "knew he wasn't supposed to be over there, but . . . he was invited." Gonzalez claimed that Flora had

---

[2]After they married, Flora and Gonzalez had three children. In May 2023, the children ranged in age from 13 years old to 19 years old. Gonzalez also has two older children from prior relationships; Flora considers these children to be her own.

texted him permission to come to the home. But he was unable to provide those text messages to the officer, and the officer could not find any such text messages on Gonzalez's cellphone. The officer arrested Gonzalez for violating the temporary protective order.

On June 14, 2023, Judge Charles Barnard of the 89th District Court signed an agreed final protective order. The final order was served on Gonzalez in open court, and he acknowledged receipt by his signature. The final protective order, like the temporary order, granted Flora exclusive use of the couple's residence and prohibited Gonzalez from going within 100 yards of it.

On June 24, 2023, Flora and two of her children were running errands when one of the children received a notification on his cellphone alerting him that a recently installed security camera detected movement at the home. The child viewed live video and saw Gonzalez lurking around the home's exterior before climbing through a window; the child called police. Police officers eventually found Gonzalez inside Flora's home hiding underneath a bed. Because Gonzalez was uncooperative and refused to come out, the officers had to drag him out. Officers arrested Gonzalez for violating the protective order.

On July 19, 2023, around 2:00 a.m., Flora heard someone crying and knocking on her backdoor, which leads into her bedroom. When she cracked open the door to see what was going on, Gonzalez forced his way inside. One of the children called the

police, and they arrived and arrested Gonzalez for repeatedly violating the protective order.

Gonzalez testified at trial and denied assaulting Flora. According to Gonzalez, he was not informed about the protective order, he did not read the protective order, and he became aware that there was a protective order only after his third arrest. But the jury convicted Gonzalez of repeatedly violating a protective order and sentenced him to six years' incarceration. The trial court sentenced him accordingly. This appeal followed.

## II. Discussion

Each of Gonzalez's issues on appeal concern whether the indictment charging Gonzalez with repeatedly violating a protective order was properly amended. That indictment began with the introduction, "IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS," and alleged that Gonzalez

> during a continuous period that was twelve months or less in duration, namely, from on or about June 24, 2023 through July 19, 2023, engage[d] in conduct two or more times that constituted an offense under Section 25.07 of the Texas Penal Code, namely: violated a court order prohibiting [Gonzalez] from the following:

> On or about June 24, 2023, in Wichita County, Texas [Gonzalez] did then and there intentionally and knowingly violate the terms of an order issued by Judge Gary Butler sitting for the 89th District Court of Wichita County, Texas, on the 22nd day of May, 2023, under authority of Chapter 83 of the Texas Family Code, by intentionally and knowingly going to or near the residence of [Flora], a member of the family or household or protected individual described in the protective order . . . and

On or about July 19, 2023, in Wichita County, Texas [Gonzalez] did then and there intentionally and knowingly violate the terms of an order issued by Judge Gary Butler sitting for the 89th District Court of Wichita County, Texas, on the 22nd day of May, 2023, under authority of Chapter 83 of the Texas Family Code, by intentionally and knowingly going to or near the residence of [Flora], a member of the family or household or protected individual described in the protective order. . . .

The State later filed a motion to amend the indictment. In paragraph one, the motion included most of the indictment as it then read except the introductory clause; paragraph two requested leave to amend the quoted part of the indictment to read as follows:

The Grand Jury of Wichita County, State of Texas, . . . does present that . . . Gonzalez, . . . did in said county and state on or about the: 19th day of July, 2023, during a continuous period that was twelve months or less in duration, namely, from on or about June 24, 2023 through July 19, 2023, engage in conduct two or more times that constituted an offense under Section 25.07 of the Texas Penal Code, namely: violated a court order prohibiting [Gonzalez] from the following:

On or about June 24, 2023, in Wichita County, Texas [Gonzalez] did then and there intentionally and knowingly violate the terms of an order issued by Judge Charles Barnard of the 89th District Court of Wichita County, Texas, on the 14th day of June, 2023, under authority of Chapter 85 of the Texas Family Code, by intentionally and knowingly going to or near the residence, to-wit: within one hundred (100) yards of the residence of [Flora], a member of the family or household or protected individual described in the protective order . . . and

On or about July 19, 2023, in Wichita County, Texas [Gonzalez] did then and there intentionally and knowingly violate the terms of an order issued by Judge Charles Barnard of the 89th District Court of Wichita County, Texas, on the 14th day of June 2023, under authority of Chapter 85 of the Texas Family Code, by intentionally and knowingly going to or near the residence, to-wit: within one hundred (100) yards of the residence of [Flora], a member of the family or household or protected individual described in the protective order . . . .

6

AGAINST THE PEACE AND DIGNITY OF THE STATE.

The State asked that the trial court enter an order granting the motion, amending the indictment as requested in paragraph two of the motion to amend and allowing the case to proceed upon the amended indictment.

The trial court granted the State's motion to amend the indictment, and Gonzalez's counsel signed the order under the handwritten note "w/o objection." The trial court's order states,

(1) the State's Original Motion to Amend the Indictment is granted;

(2) under this Court's direction, the indictment in this case is amended as requested by the State in paragraph number two (2) of its Original Motion to Amend the Indictment; and

(3) the case shall proceed upon the indictment as amended by this Order.

At trial, the State read the amended indictment before the jury,[3] without objection, and Gonzalez entered a plea of not guilty. Gonzalez also offered no objection to the jury charge that tracked the language of the amended part of the indictment.

Gonzalez first argues that the State failed to actually amend the indictment. He contends that to successfully amend the indictment, the State could only have (1) interlineated the document, (2) attached a photocopy of the amendment to the indictment, or (3) recited the actual amending language in the order of the district

---

[3]The State began with the introductory clause from the original indictment and then read verbatim the language from paragraph two of the amendment motion.

court, citing as authority *Ward v. State*, 829 S.W.2d 787 (Tex. Crim. App. 1992), *Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000), and *Valenti v. State*, 49 S.W.3d 594 (Tex. App.—Fort Worth 2001, no pet.). Gonzalez reasons that because the State did not follow one of these approved methods, the indictment was not actually amended.

Gonzalez acknowledges that *Riney* dispensed with the requirement that indictments could be amended only by interlineating and opened the door for other acceptable methods. *Riney*, 28 S.W.3d at 565–66. But he argues that *Riney* still requires the State to do something more than simply obtain an order granting its motion to amend, quoting the following: "We note that *Ward v. State* continues to stand for the proposition that '[n]either the motion [to amend] itself nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10.'"

The State counters that *Perez v. State* allows for an indictment to be amended solely by court order granting a motion to amend. 429 S.W.3d 639 (Tex. Crim. App. 2014). We agree.

In *Perez*, the defendant was originally charged in an eleven-count indictment, but the day before trial, the State filed a motion asking the trial court to amend the indictment by replacing the then-existing eleven counts with five counts. *Id.* at 640. At a hearing on the motion, defendant's counsel stated that he had no objection to the amendments. *Id.* The trial court granted the motion to amend but did not interlineate the original indictment itself or attach a photocopy of the original indictment. *Id.* at

8

641. The amended indictment was read before the jury. *Id.* The defendant argued on appeal that the indictment was not properly amended because there was no physical alteration to the original indictment. *Id.*

Expressly following the path it began in *Riney* of "moving away from *Ward's* strict holding," the court held that because the defendant had been given actual notice of the proposed amendments and had clearly stated that he had no objections to them, the indictment had been properly amended simply by the trial court's order granting the State's motion to amend—without the need for the State to create a new, separate document reflecting the amendment. *Id.* at 643. Thus, in *Perez*, the court of criminal appeals expressly disavowed *Riney's* statement on which Gonzalez relies even if it did not expressly overrule all of *Ward*.

Gonzalez maintains that *Perez* is distinguishable because in that case (1) "there was an *actual document* labeled as 'Exhibit A' . . . attached to the State's amendment motion," and (2) "the defendant actively agreed to the action of the trial court in using Exhibit A as the indictment and appellant was aware of what was occurring." But these are minor distinctions without a difference. *Perez* clearly dispensed with the requirement that the State create a separate, amended document. *Id.* And, here, the State's amendment motion sought to replace all but the introductory clause of the original indictment; the trial court's order approved that amended language, and Gonzalez affirmatively noted that he had no objection. Gonzalez does not explain why doing the same at a live hearing would be any different.

9

Gonzalez further argues that *Perez* is limited to its "own unique circumstances" because it did not expressly overrule *Ward*. But this argument ignores *Perez's* express acknowledgement that it was "moving away from *Ward's* strict holding." *Id.* at 643. In *Huerta v. State*, the defendant did not object to the State's motion to amend the indictment, and the trial court made a docket entry noting that the motion was granted. 668 S.W.3d 155, 157 (Tex. App.—Amarillo 2023, pet. ref'd). The amended indictment was read to the jury, and the defendant pleaded not guilty. *Id.* The appellate court held that the indictment was properly amended. *Id.* at 159.

Like the defendants in *Perez* and *Huerta*, Gonzalez did not object after receiving notice of the proposed amendment. In fact, he noted affirmatively that he had no objection. The amended indictment was read before the jury, and Gonzalez entered a plea to the amended indictment. We hold that the indictment was properly amended by the State's motion and the trial court's order incorporating the language from the motion. *See Perez*, 429 S.W.3d at 643. We overrule Gonzalez's first issue. Because we hold that the State properly amended the indictment, we need not address Gonzalez's second issue that the evidence was insufficient to support his conviction under the original indictment. *See* Tex. R. App. P. 47.1.

In his third issue, Gonzalez argues that even if the indictment was properly amended, it was void because it did not contain the language "In the Name and by Authority of The State of Texas" as required by Article 21.02 of the Texas Code of Criminal Procedure. This argument is based on the faulty premise in his first two

10

issues: that the trial court's order granting the amendment could not be read together with the only part of the original indictment that the State did not seek to amend—the introductory clause. But even if the trial court's order served to do away with that language, Gonzalez failed to preserve that complaint for appeal.

An indictment that does not comply with Article 21.02 is considered defective. Tex. Code Crim. Proc. Ann. art. 21.02; *Jenkins v. State*, 592 S.W.3d 894, 901 (Tex. Crim. App. 2018). But a defendant who does not object to a defect, error, or irregularity of form or substance in the indictment before the date on which the trial on the merits commences forfeits the right to object to the defect, error, or irregularity and may not raise the objection on appeal. *Id.* at 902.

As we previously stated, Gonzalez's counsel signed the trial court's order granting the State's motion to amend the indictment, noting that he did not object, and he did not object when the amended indictment language was read at trial—along with the introductory clause in the original indictment. Nothing in the record indicates that Gonzalez objected that the amended indictment was defective for failing to include the language set out in Article 21.02. Thus, Gonzalez has waived his complaint for appellate review. *See id.*

Gonzalez contends that he did not waive his complaint because he had no reasonable opportunity to object and was unaware that the amendment had not been properly performed. But even if Gonzalez had preserved his complaint for review, he is mistaken in his argument that failure to include the commencement language

resulted in a void indictment and conviction. An indictment is not void simply because it is defective. *Id.* at 901.

To meet the definition of an indictment under Article V, Section 12(b) of the Texas Constitution, the indictment must charge a person and charge the commission of an offense. Tex. Const. art. V § 12(b); *Id.* at 898. Gonzalez does not argue that the amended indictment fails to charge him with the commission of an offense. Any defect in the amended indictment from failing to incorporate the original indictment's commencement language did not prevent it from qualifying as an indictment and render it void. *Jenkins*, 592 S.W.3d at 901. We overrule Gonzalez's third issue.

### III. Conclusion

We affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 27, 2024