*138-15*

No. --PD-0138-CR--

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

CESAR GOMEZ
Appellant/Petitioner,

VS.

THE STATE OF TEXAS
Appellee/Respondent.

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

In Appeal No. 12-13-00050-CR
From the
Court of Appeals
for the Twelfth Judicial District
of Tyler, Texas

Pro se: Cesar Gomez
TDCJ-ID # 1839985
Eastham State Farm
2665 Prison Road # 1
Lovelady, Texas 75851

## TABLE OF CONTENTS

INDEX OF AUTHORITIES...........................................III

STATEMENT REGARDNING ORAL ARGUMENT..............................1

STATEMENT OF THE CASE...........................................1

STATEMENT REGARDING PROCEDURAL HISTORY..........................2

**GROUND FOR REVIEW NUMBER ONE:**
Whether the Court of Appeals properly addressed issues one, two, three, four, that the trial court did not abuse its discretion in admitting two photographs during his trial on punishment in violation of Texas Rules of Evidence 401, 402, and 403.

**GROUND FOR REVIEW NUMBER TWO:**
Whether the Court of Appeals properly addressed issue five that Petitioner did not suffer egregious harm in failing to give instructions to contextualize the nonbinding date of the offense order to prevent reliance on conduct that occurred outside the chronological perimeter for continuous sexual abuse of a child?

**GROUND FOR REVIEW NUMBER THREE:**
Whether the court of Appeals properly addressed issues six, seven, eight, nine, ten, and eleven, in the trial court committed various errors stemming from its attempt to amend the indictment?

**GROUND FOR REVIEW NUMBER FOUR:**
Whether the Court of Appeals properly addressed issue twelve, in finding at the hearing on his motion to suppress that the interrogator complied with the oral confession statute when he told the Appellant that his right to counsel did not become effective until after he was interviewed, was Constitutional under Fifth, Sixth, and Fourteenth Amendments?

ARGUMENT NUMBER ONE.........................................3-5

ARGUMENT NUMBER TWO.........................................5-6

ARGUMENT NUMBER THREE.......................................7-8

ARGUMENT NUMBER FOUR.......................................8-11

PRAYER FOR RELIEF...........................................12

CERTIFICATE OF SERVICE......................................12

APPENDIX (OPINION OF THE TWELFTH COURT OF APPEALS).............A

## TABLE OF CITED AUTHORITIES

Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App. 1985)..........5,6

Alvarado v. State, 912 S.W.2d 199 (Tex.Crim.App. 1995).........11

Arizona v. Mauro, 481 U.S. 520 (1987)...........................10

Arizona v. Robertson, 486 U.S. 477 (1988).......................9

De La Paz v. State, 279 S.W.3d 336 (Tex.Crim.App. 2009).........3

Delgado v. State, 235 S.W.3d 244 (Tex.Crim.App. 2007)...........5

Dinkins v. State, 894 S.W.2d 330 (Tex.Crim.App. 1995)...........5

Edwards v. Arizona, 451 U.S. 477 (1981).........................9

Jennings v. State, 302 S.W.3d 344 (Tex.Crim.App. 2010).........6

Jordan v. State, 256 S.W.3d 286 (Tex.Crim.App. 2008)...........4

Michigan v. Jackson, 475 U.S. 625 (1986).......................11

Miranda v. Arizona, 384 U.S. 436 (1966)..................9,10,11

Montgomery v. State, 810 S.W.2d 372 (Tex.Crim.App. 1990)........3

Stirone v. United States, 361 U.S. 212 (1960)..................7,8

Soffar v. Dretke, 368 F.3d 441 (5th Cir. 2004).................11

Soffar v. Johnson, 237 F.3d 411 (5th Cir. 2000)................11

Taylor v. State, 332 S.W.3d 483 (Tex.Crim.App. 2011)...........5

Upton v. State, 853 S.W.2d 557 (Tex.Crim.App. 1994)...........10

United States v. Young, 730 F.2d 221 (5th Cir. 1984)...........7

United States v. Arlen, 947 F.2d 139 (5th Cir. 1991)...........7

Ward v. State, 829 S.W.2d 787 (Tex.Crim.App. 1992).............7

**IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS**

----------------

**CESAR GOMEZ**
Appellant/Petitioner,
**VS.**
**THE STATE OF TEXAS**
Appellee/Respondent.

----------------

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

----------------

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

Appellant/Petitioner ("Petitioner" hereinafter) respectfully submits this Petition for Discretionary Review, ("PDR" hereinafter) and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

## STATEMENT REGARDING ORAL ARGUMENT

The Petitioner request oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that oral argument may help simplify and clarify the issues.

## STATEMENT OF THE CASE

Petitioner appealed his conviction for continuous sexual abuse of a child younger than fourteen years of age, for which he was sentenced to imprisonment for life without the possibility of parole. Petitioner raised fourteen issues on appeal in the Twelfth Court of Appeals, who affirmed the conviction. In condensed form, Petitioner raises twelve of the fourteen issues. Petitioner calls to question the reasoning of the Court of Appeals, especially in reference to his assertion of his right of counsel, and non-suppression in trial court, of custodial interrogation by Detectives. The Petitioner now submits this his PDR the Court of Appeals decision in all aspects.

## STATEMENT OF PROCEDURAL HISTORY

In cause no. 241-0529-12 the Petitioner was charged initially with Aggravated Sexual Assault of a Child. On Feb. 1, 2013, a mere 3 days prior to trial, the trial court granted the State's motion to amend the indictment and the trial court interlineated the indictment on Feb. 2, 2013. (CR 42, 46; CRS2; 10 RR 1, 11) Petitioner plead not guilty, but was convicted by a jury on Feb. 6, 2013. The Petitioner was convicted on the Original Indictment as returned by the Grand Jury. (See, Original Judgement of Trial Court, CR 102-03, cf. 121-22, cf. CR 91) However, the Trial Court entered a nunc pro tunc order that effectively altered the judgement to Continuous Sexual Abuse of a Child Younger than Fourteen Years of Age. Id. On Jan. 21, 2015, the Tyler Court of Appeals affirmed the conviction. No motion for rehearing was filed. On Feb. 6, 2015, this Honorable Court granted the motion for extension to file PDR up to and including April 21, 2015. On April 15, 2015, this PDR was timely forwarded to the Court of Criminal Appeals, by placing the same in the Institutional Internal Mailing System, for filing pursuant to Rules 9.2(b), 68.3, Tex. R. App. P.

### I.

Whether the Court of Appeals properly addressed issues one, two, three, and four, that the trial court did not abuse its discretion in admitting two photographs during his trial on punishment in violation of Texas Rules of Evidence 401, 402, and 403?

### II.

Whether the court of Appeals properly addressed issue five, that Petitioner did not suffer egregious harm in failing to give instructions to contextualize the nonbinding date of the offense order to prevent reliance on conduct that occurred outside the chronological perimeter for continuous sexual abuse of a child?

## III.

Whether the Court of Appeals properly addressed issues six, seven, eight, nine, ten, and eleven, in the ~~the~~ trial court committed various errors stemming from its attempt to amend the indictment?

## IV.

Whether the Court of Appeals properly addressed issue twelve, in finding at the hearing on his motion to suppress that the interrogator complied with the oral confession statute when he told Appellant that his right to counsel did not become effective until after he was interviewed, was Constitutional under Fifth, Sixth, and Fourteenth Amendments?

### ARGUMENT NUMBER ONE

In Grounds One through Four in the Court of Appeals, the Nexus and facts are essentially the same, and involve Exhibits 84 and 85 of the State on Punishment. The Court of Appeals has made a decision in direct conflict with the precepts of this Honorable Court, the United States Supreme Court, and made a decision that so far departs from the accepted and usual course of judicial procedure, as to call for an exercise of this Honorable Courts power of supervision.

In State's Exhibit 84 and 85, the State sought to introduce photo images of the Petitioner's penis for no other reason than to inflame the minds of the jurors. There can be no reasonable "zone of disagreement," in the instant case. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g) The Court of Appeals pointed to the State's theory that the Petitioner is a "voyeur." (Slip Op. at 4) However, this is not a "theory of law applicable to [the] ruling". See, *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex.Crim.App. 2009)

The Court of Appeals stated plainly, "we do not agree that it was helpful to the jury to view pictures of Appellant's penis so that it could see precisely what F.G. saw." (Slip Op. at 4)

The Court of Appeals then disavows this view in favor of the State due to a security system installed in the home. However, the Court of Appeals and the State allude that there were only two cameras in the home, which is untrue. Further, the Court of Appeals held, "that officers were unsuccessful in recovering past videos recorded by the surveillance system." (Slip Op. at 4) Instead the Court of Appeals uses supposition to support its view of the evidence. Id.

Quite plainly, there was no actual probative value to the evidence. The exhibit was nothing more than, legal photos of two consenting adults on the Petitioner's cell phone, and nothing to support the State's view, or the Court of Appeals opinion. Further, the State has violated Discovery under Tex. Code Crim. proc. art. 39.14, in that there are multiple burglary/theft reports on file with the police department that demonstrates the security system was installed for the purpose of security, not to "show that Appellant invested a substantial sum of money and time installing a video system to record himself abusing F.G." (Slip Op. 4)

The Court of Appeals further admitted, the State's theory was improper to demonstrate, "and that's what that little girl had to look at for six years." (Slip Op. at 3) Plainly the sole purpose of the photos, which were not illegal in any fashion, was to inflame the minds of the jurors. The State had plenty of evidence sufficient to demonstrate that Petitioner had a penis. There should have been no harm analysis, as it would have been, and was, sheer speculation, because there were no objective facts that were decided on punishment. *Jordan v. State*, 256 S.W.3d 286, 293 (Tex.Crim.App. 2008)

The Petitioner's constitutional Right's were substantially harmed, and the Court of Appeal's decision was improper at best, and a severe departure from the accepted and usual course of judicial procedure. The Conduct depicted is not illegal, and has no relevance in the instant case.

### ARGUMENT NUMBER TWO

The Court of Appeals recognized, "This instruction is erroneous. See, e.g., *Kuhn*, 393 S.W.3d at 524; *Martin v. State*, 335 S.W.3d 867, 876 (Tex.App.-Austin 2011, pet ref'd)" (Slip Op. at 7) However, the Court of Appeals held an egregious harm analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985) This application is misplaced.

The function of the jury charge is to instruct the jury on the law applicable to the case. *Dinkins v. State*, 894 S.W.2d 330, 338 (Tex.Crim.App. 1995) Furthermore, pursuant to Tex. Cdoe Crim.Proc art. 36.14, the trial judge "shall" provide the jury with a written charge distinctly setting forth "the law applicable" to the case. Id. The unambiguous use of the word "shall" imparts a duty upon the Trial Court. See, Tex.Gov't Code § 311.016(2) Therefore, when the jury charge error involves failure to submit an instruction concerning the law applicable to the case, a defendant is not required to make an objection or request to have the instruction included in the jury charges. Tex. Code Crim.Proc. art 36.14; *Taylor v. State*, 332 S.W.3d 483, 493 (Tex.Crim.App. 2011). The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex.Crim.App. 2007)

This Honorable Court reaffirmed that all jury charge errors, including errors or omissions in the verdict form, are cognizable on appeal despite lack of objection in Trial Court. See, *Jennings v. State*, 302 S.W.3d 306, 311 (Tex.Crim.App. 2010) However, due to the fact that there was no objection, the charge was subjected to a harm analysis under *Almanza*, 686 S.W.3d at 171.

Though the Court of Appeals attempts to mitigate the erroneous jury charge by viewing the charge as a whole, it substantially fails to demonstrate any actual mitigating points. Instead, the Court of Appeal points to two insignificant portions of the jury charge in it's opinion. (Slip Op. at 7-8) The fact that one of the portions of the jury charge was requested specifically by the Petitioner demonstrates that the charge was recognized as defective, and counsel though not objecting to the erroneous portion of the charge, sought to limits its influence. (Slip Op. at 7)

The Court of Appeals further erred in it's reasoning by pointing out that both the Petitioner and F.G.'s testimony failed to provide any specific dates. (Slip Op. at 10) Though no specific dates were enunciated by the Petitioner, a specific time frame was, late 2011 through early 2012. Id.

The Court of Appeals took an exceedingly one sided view of the record in favor of the alleged victim F.G. The nature of a crime should not weigh any heavier from one case to another. Thus, the Court of Appeals decision has departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Honorable Court's power of supervision.

## ARGUMENT NUMBER THREE

Article I § 10, guarantees an accused the right to be informed about, and not simply be aware of the nature and cause of the accusation. *Ward v. State*, 829 S.W.2d 787, 794 (Tex.Crim.App. 1992)

The Fifth Amendment of the U.S. Constitution, guarantees that a criminal defendant will be tried only on charges alleged in grand jury indictment, which cannot be be broadened or altered except by grand jury. *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991); citing, *Stirone v. United States*, 361 U.S. 212, 215-17 (1960)

In the instant case, the indictment was altered far more than a mere constructive amendment. Instead, the indictment was completely altered in such a fashion that it altered the operable facts of the charge, defensive theories, and defense strategies. When the jury is allowed to convict the defendant upon a factual basis that essentially modifies an essential element of the offense charged, reversal is automatic, because defendant may have been convicted on a ground not charged in the indictment. *United States v. Young*, 730 F.2d 221, 223 (5th Cir. 1984); citing *Stirone*, 361 U.S., at 219

Texas Code of Criminal Procedure art. 28.10(a) requires "the court shall allow the defendant not less than 10 days, * * * to respond to the amended indictment or information." (emphasis added) This was not accomplished, and further was not even allowed. The State waited until a mere three days prior to trial to motion the trial court under 28.10, then the court, out of the presence of the defendant or counsel, granted the motion and

interlineated the indictment on a Saturday. (CR 42, 46, CRS 2; 10 RR 1, 10) Thereby, giving the defendant zero notice of the altered charging instrument.

The United States Supreme Court in *Stirone*, supra, long ago held that such an amendment is unconsitutional, therefore, in the instant case, the Court of Appeals holding that the "record supports that an effective amendment was made to the indictment to allege continuous sexual abuse," is improper, and erroneous. (Slip Op. at 14) This is further aggravated by the fact that the Court of Appeal held that the Judgement Nunc Pro Tunc that altered the judgement entered on Feb. 6, 2013, on Feb 26, 2013, [20 days after trial, and after Notice of Appeals was filed] was valid. (Slip Op., at 16-17) This was also accomplished outside the presence of the Petitioner. (Slip Op. at 14) This demonstrates that the Trial Court was in actuality relying upon the original charging instrument, and not the interlineated indictment. Further, the interlineated indictment was not filed with the District Clerk prior to trial. These issues were completely ignored by the Court of Appeals

Thus, the Court of Appeals has decided an important question of federal law in a way that conflicts with the applicable decisions of the Supreme Court of the United States, and this Honorable Court, and the opinion has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Honorable Courts power of supervision.

## ARGUMENT NUMBER FOUR

A videotaped interrogation of Petitioner that was admitted as State's Exhibit Number One. (12 RR 35, 52-53, 62) Detective

Roberts and Tyler Police Department Officer Edgar Zapata participated. (12 RR 27-28, 54,55; SX-1/Tape 1: 9:15-10:00)

Officer Zapata gave Petitioner a "standard *Miranda* warning," in Spanish, and testified Petitioner understood. (CR 58-59; 12 RR 20-26, 28-29, 62; SX-1/Part 1: 10:20). *Miranda v. Arizona*, 384 U.S. 436 (1966)(providing that a defendant must be informed about his right to remain silent, the danger that a statement can be used against him, his right to counsel and his right to appointed counsel). In Texas, an additional warning is required that the accused has the right to terminate an interview at any time. Tex. Code Crim.Proc. art. 38.22 § 2(a)(5). The Court of Appeals focused on Petitioner's Fifth Amendment right to remain silent, completely ignoring the Sixth Amendment right to counsel. (Slip Op. at 17-19)

In 1988, the Supreme Court of the United States held under *Miranda*, that a presumption arises when a suspect, by any means, request counsel, that he considers himself unable to deal with pressures of custodial interrogation without legal assistance. *Arizona v. Robertson*, 486 U.S. 675, 684 (1988); see also, *Edwards v. Arizona*, 451 U.S. 477 (1981). Detective Zapata stated (or stated in effect) "OK, at first he said he does not want to talk, because he does not understand what is going on...I told him we already explained to him why he is under arrest and he says he does not have means to get a lawyer...he does not want to talk because he does not know what is going on." (SX-1/Part 1: 11:30-12:00) Detective Roberts replied or replied in effect "a lawyer can be **appointed** for him. **By the Court. At a later time.**"

(SX-1/Part 1: 12:00)(emphasis added) Detective Zapata indicated that Petitioner wanted to know what would be asked (if Petitioner agreed to continue without a lawyer.) (SX-1/Part 1: 12:30). This in and of itself leads to a Sixth Amendment violation. "When accused has expressed desire to deal with police only through counsel, accused is not subject to further interrogation by authorities until counsel has been made available." *Arizona v. Mauro*, 481 U.S. 520, 525--226 (1987); see also, *Robertson*, 486 U.S. at 682-683. Further, once accused has requested an attorney, any waiver is invalid outside presence of an attorney. Id.

The Court of Appeals recognized that the issue was preserved both by written motion and at trial. (Slip Op. at 17-18) However, the Court held that a "written motion is insufficient in itself to preserve for appeal the specific argument that Roberts told Appellant that his right to appointed counsel did not not become effective until after he was interviewed." (Slip Op at 18) This does not agree with well established federal law as determined by the Supreme court of the United States.

The Court of Appeals makes an "assum[ption] arguendo that Appellant preserved the issue he now seeks to raise," (Slip Op. at 18) knowing the issue was well preserved both in writing and before the trial court orally. Petitioner opposed admission of the videotape properly on the ground that he was unaware that he was waiving his *Miranda* rights because he had been drinking a lot. (12 RR 32-34, 62) However, once the Petitioner asserted his right to counsel, the burden of proof shifted from the Petitioner, to the State to demonstrate the right had not been

invoked, this is a heavy burden to meet, and one that was not met by the State, or required by the Court of Appeals. See, *Upton v. State*, 853 S.W.2d 557 (Tex.Crim.App. 1994) "The court must give a broad, rather that a narrow interpretation to a suspect's request for counsel." *Soffar v. Johnson*, 237 F.3d 411, 455 (5th Cir 2000)(quoting *Michigan v. Jackson*, 475 U.S. 625, 633 (1986)) An Appellate Court should always use the broader brush of telling the whole truth as this can paint a very different picture than the one presented at trial. *Soffar v. Dretke*, 368 F.3d 441, 450 (5th Cir. 2004)

The protections in the Texas oral confession statute against involuntary statements is broader than federal *Miranda* or due process protections. Tex. Crim. Proc. arts 38.22 §3(a), 38.23; *Miranda*, supra. Voluntariness under state law is to be measured according to the totality of the circumstances, with the State having the burden of proof. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App. 1995) The State has not met this burden, in fact the Court of Appeals wholly failed to hold the State to any burden whatsoever.

Therefore, the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Honorable Courts supervisory power, in that the Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of this Honorable Court and the Supreme Court of the United States.

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review.

Respectfully submitted,

*Cesar Gomez*

Cesar Gomez
TDCJ-ID # 1839985
Eastham State Farm
2665 Prison Road # 1
Lovelady, Texas 75851

## CERTIFICATE OF SERVICE

The undersigned Petitioner/Appellant hereby certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been mailed, U.S. mail, first-class postage prepaid, to the Office of the Criminal District Attorney for Smith County, Dillion Matt Bringham III, 100 N. Broadway, Tyler, Texas 75702, and to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, on this the 15th day of April, 2015.

*Cesar Gomez*

Cesar Gomez
TDCJ-ID # 1839985
Eastham State Farm
2665 Prison Road # 1
Lovelady, Texas 75851

APPENDIX - A

OPINION OF THE TWELFTH COURT OF APPEALS

No. 12-13-00050-CR

CESAR GOMEZ,
Appellant

vs.

THE STATE OF TEXAS,
Appellee.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JANUARY 21, 2015

NO. 12-13-00050-CR

**CESAR GOMEZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0529-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., and Hoyle, J.*

# NO. 12-13-00050-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CESAR GOMEZ,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Cesar Gomez appeals his conviction for continuous sexual abuse of a child younger than fourteen years of age, for which he was sentenced to imprisonment for life without the possibility of parole. Appellant raises fourteen issues on appeal. We affirm.

## BACKGROUND

Appellant began sexually abusing his daughter, F.G., in 2006 when she was eight years old. According to F.G., the sexual abuse continued until March 1, 2012, when she was fourteen years old. On March 5, 2012, she made an outcry statement to a school counselor concerning Appellant's sexually abusing her. As a result, Appellant was arrested and confessed in a videotaped interview to having sexually assaulted F.G. multiple times within the preceding six month period as a result of his being intoxicated. Officers searched Appellant's home and discovered, among other things, an expensive video surveillance system with multiple cameras, one of which was aimed at F.G.'s bed and the other of which was aimed at the bed in the master bedroom.

Appellant was charged by indictment with aggravated sexual assault and pleaded "not guilty." The indictment was later amended[1] to charge Appellant with continuous sexual abuse of a

---

[1] Appellant has raised several issues concerning whether the indictment was properly amended.

child under fourteen years of age. The matter proceeded to a jury trial, following which the jury found Appellant "guilty" as charged. After a trial on punishment, the jury assessed Appellant's punishment at imprisonment for life without the possibility of parole. The trial court sentenced Appellant accordingly, and this appeal followed.

## ADMISSIBILITY OF PUNISHMENT EVIDENCE

In his first, second, third, and fourth issues, Appellant argues that the trial court abused its discretion in admitting two photographs during his trial on punishment in violation of Texas Rules of Evidence 401, 402, and 403.

### Standard of Review and Governing Law

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). "That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede." *Id.* Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for a correct ruling. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Under the Texas Rules of Evidence, relevant evidence is generally admissible. TEX. R. EVID. 402. Texas Code of Criminal Procedure, Article 37.07, Section 3(a)(1), which governs the admissibility of evidence during the punishment phase of a noncapital trial, states, "Regardless of the plea and whether the punishment [is] assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing. . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014). In discussing the practical effect of Article 37.07, the Texas Court of Criminal Appeals has stated as follows:

> [U]nder Article 37.07, the admissibility of evidence in a non-capital trial is a matter of policy, including the policy of giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant. The result is that what is relevant for the jury to hear during punishment is determined by whatever is helpful to the jury.

*Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007) (citation omitted). With respect to the relevance of photographic evidence, the court of criminal appeals further instructs as follows:

> A photograph should add something that is relevant, legitimate, and logical to the testimony that accompanies it and that assists the jury in its decision-making duties. Sometimes this will, incidentally, include elements that are emotional and prejudicial. Our case law is clear on this

2

point: If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects.

*Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

Under Rule 403 of the Texas Rules of Evidence, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389. Rule 403 requires both trial and reviewing courts to analyze and balance (1) the probative value of the evidence (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *See Erazo*, 144 S.W.3d at 489. In making this determination, we consider factors including (1) the number of exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are black and white or color, (6) whether they are close-up shots, (7) whether the body is naked or clothed, (8) the availability of other means of proof, and (9) other circumstances unique to the individual case. *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).

## Pornographic Photographs of Appellant and His Wife

In the instant case, the State sought to admit two photographs recovered from Appellant's cellular telephone. Each of these pictures was taken from Appellant's point of view. The first picture depicts Appellant's wife placing her lips on his penis. The second picture depicts Appellant's wife placing her tongue on the underside of his penis. Appellant objected to the admissibility of these photographs, arguing that they were not relevant and were "more prejudicial than probative." The trial court overruled Appellant's objections.[2]

### *Relevance*

At trial, the State asserted that the photographs were relevant because the photographs were of Appellant's penis, "and that's what that little girl had to look at for six years." And while

---

[2] Thereafter, the parties discussed with the trial court whether the penis depicted in the picture belonged to Appellant. The trial court admitted the photographs conditioned on the State's proving Appellant's identity therein. Later, the State called Appellant's girlfriend as a witness. She identified Appellant's wife in the photographs and further identified the penis depicted in the photographs as Appellant's. The trial court indicated its intent to admit the photographs for all purposes. Appellant objected generally. The trial court overruled Appellant's objections "for the reasons previously stated by the Court in response" thereto. It is apparent from the record that the trial court understood that Appellant was renewing his previous objections. *See Taylor v. State*, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996).

3

the State's assertion concerning Appellant's abuse of F.G. is uncontested, we do not agree that it was helpful to the jury to view pictures of Appellant's penis so that it could see precisely what F.G. saw.

However, we are not bound by this underlying rationale for admissibility. *See De La Paz*, 279 S.W.3d at 344. An underlying theory of Appellant's defense was based on his assertion that his sexual abuse of F.G. took place during the six month period preceding her outcry and resulted from his being intoxicated. Contrary to the limited timeline of abuse asserted by Appellant, F.G. testified that Appellant regularly sexually assaulted her in her bedroom from 2006 through 2012. When officers searched Appellant's house, they discovered, among other things, a $1,200.00 video surveillance system with multiple cameras, one of which was aimed at F.G.'s bed and the other of which was aimed at the bed in the master bedroom. The system was connected through the walls to a recording device located in the master bedroom with a monitor that displayed the various camera feeds. The record reflects that officers were unsuccessful in recovering past videos recorded by the surveillance system. Nonetheless, the record also supports that Appellant admitted to having used the surveillance system on one occasion to record his sexual abuse of F.G.[3]

Consequently, the pictures recovered from Appellant's cellular telephone depicting his wife performing fellatio on him tend to support the State's theory that Appellant regularly engaged in voyeurism.[4] Therefore, the State's establishing that Appellant engaged in voyeurism and used his expensive surveillance system to further that end was helpful to the jury in assessing Appellant's punishment because it contradicted his assertion that his sexual abuse of F.G. was limited to a handful of regrettable encounters as a result of his being intoxicated. Rather, it tends to show that Appellant invested a substantial sum of money and time installing a video system to record himself sexually abusing F.G. Accordingly, we conclude that the trial court did not err in overruling Appellant's relevance objection to these exhibits.

---

[3] The record reflects that Appellant did not frequently sleep in the master bedroom. But F.G. told the nurse who examined her that when Appellant would sexually assault her in her bedroom, he would go into the master bedroom afterward. The jury reasonably could have concluded from this evidence that Appellant went to the master bedroom on these occasions to watch the video taken of his sexual abuse of F.G.

[4] A "voyeur" is a person who derives sexual gratification from observing the sex organs or sexual acts of others, especially from a secret vantage point. *See* THE AMERICAN HERITAGE DICTIONARY 1356 (2nd College Ed. 1982).

4

*Danger of Unfair Prejudice*

We next consider whether the probative value of these photographs is substantially outweighed by the danger of unfair prejudice to Appellant. We first note that the probative value of the evidence is high. The jury had a wide range of punishment to consider. *See* TEX. PENAL CODE ANN. § 21.02(h) (West Supp. 2014); TEX. GOV'T CODE ANN. § 508.145(a) (West Supp. 2014). And while the thought of Appellant's committing this act against his daughter is deplorable in and of itself, evidence tending to support that he did so regularly over a period of years rather than at random was extremely helpful to the jury in assessing his punishment.[5]

Furthermore, the State had a significant need for this evidence, particularly in light of the fact that it was unable to recover any past video from the recording device. Further still, the State spent a relatively short time developing the evidence during a very brief exchange with Detective Gregg Roberts concerning the recovery of the pictures and a slightly longer period spent questioning Appellant's girlfriend in order to identify the subjects of the photograph.[6]

As for the exhibits, they are two 8"x10" color photographs that depict a close-up shot of Appellant's wife engaged in an intimate act with her husband's exposed penis. And despite the fact that the photographs were taken with a cellular telephone, they are quite detailed. Nonetheless, the photos do not depict anything particularly "gruesome," nor do they appear to depict an illegal act.

Of course, we cannot discount the possibility that these photographs may have potentially impressed the jury in some irrational way. Indeed, Appellant's photographing his wife during her performance of oral sex and the secondary gratification he received from having taken the photograph might be considered to be repugnant by some jurors. But its potential to impress the jury in some irrational way was muted given the totality of the evidence. Specifically, Appellant's depiction in and possession of this pornographic material was likely to be construed as less alarming by the jury than the detailed evidence it heard concerning Appellant's repeatedly sexually abusing his daughter for six years beginning when she was eight years old. *See, e.g.,*

---

[5] We are unaware of any alternative evidence the State could have offered to prove Appellant's proclivity for voyeurism. In his brief, Appellant suggests an alternative means of permitting the jury to view Appellant's genitalia by allowing Appellant to pose for a nonprovocative picture. Of course, Appellant's suggestion is made in response to the reasons provided by the State at trial for admitting the photograph and has no bearing on this alternative theory of relevance.

[6] The State's questioning of Appellant's girlfriend for this purpose takes place over approximately three pages of the reporter's record.

*Pallm v. State*, No. 12-10-00329-CR, 2011 WL 6043025, at *3 (Tex. App.–Tyler Nov. 30, 2011, pet. ref'd) (mem. op., not designated for publication) (the appellant's possession of a large cache of pornographic pictures and videos depicting young girls likely to be construed as less heinous by jury than detailed evidence it heard concerning the appellant's sexually assaulting an eleven-year-old girl while his wife slept in a medicated state in same room). Therefore, we hold that the especially high probative value of the photographic evidence in question is not substantially outweighed by the danger of unfair prejudice.

Appellant's first, second, third, and fourth issues are overruled.

## CHARGE ERROR - INCREASING CHRONOLOGICAL PERIMETER FOR OFFENSE

In his fifth issue, Appellant argues that the trial court erred "in failing to give instructions to contextualize the nonbinding date of [the] offense in order to prevent reliance on conduct [that occurred] outside of the chronological perimeter" for continuous sexual abuse of a child.

### Standard of Review

We review claims of jury charge error under the two pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.–Austin 2013, pet. ref'd); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.–Austin 2008, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen*, 270 S.W.3d at 808. If error exists, we next evaluate the harm caused by the error. *See Ngo*, 175 S.W.3d at 743; *Swearingen*, 270 S.W.3d at 808. The degree of harm required for reversal depends on whether that error was preserved in the trial court. *Kuhn*, 393 S.W.3d at 524. When error is preserved in the trial court by a timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171; *Swearingen*, 270 S.W.3d at 808. By contrast, where no objection is made to charge error, reversal is required only if the error resulted in "egregious harm." *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

### Error in the Court's Charge

The offense of continuous sexual abuse of a young child became effective on September 1, 2007, and the statute does not apply to acts of sexual abuse committed before that date.[7] *See Kuhn*, 393 S.W.3d at 524. Moreover, the statute does not apply to an offense committed against a

---

[7] Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148.

child fourteen years of age or older. *See* TEX. PENAL CODE ANN. § 21.02(b)(2) (West Supp. 2014). Appellant contends that the jury charge was erroneous because it potentially allowed jurors to convict him based on acts he committed prior to September 1, 2007, or after November 21, 2011.[8] Specifically, in the abstract portion of the charge, the jury was instructed as follows:

> You are instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof that the offense, if any, was committed at any time prior to the filing of the indictment which is within the period of limitations. There is no limitation period to the offense of continuous sexual abuse of a child.

This instruction is erroneous. *See, e.g., Kuhn*, 393 S.W.3d at 524; *Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.–Austin 2011, pet. ref'd).

**Egregious Harm Analysis**

Because Appellant did not object to this instruction, we apply the "egregious harm" standard wherein reversal is required only if the charge error was "so egregious and created such harm that the defendant has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171. In determining whether an appellant was deprived of a fair and impartial trial, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Almanza*, 686 S.W.2d at 171. We will examine any part of the record that may illuminate the actual, not just theoretical, harm to the accused. *See Taylor*, 332 S.W.3d at 489–90; *Kuhn*, 393 S.W.3d at 525. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *See Taylor*, 332 S.W.3d at 490. Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. *See Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

*The Court's Charge*

Based on our review of the entirety of the court's charge, we first note that the application paragraph, which immediately precedes the erroneous abstract paragraph, correctly instructed the jury that to convict Appellant, it must find beyond a reasonable doubt that he,

---

[8] F.G.'s fourteenth birthday was November 22, 2011.

during a period that was 30 or more days in duration, to-wit: from on or about September 1, 2007 through November 21, 2011, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age.

As a result, the application paragraph mitigates against finding that any error in the abstract portion of the charge was egregious. *See Kuhn*, 393 S.W.3d at 529–30; *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Moreover, similar to the charge in *Kuhn*, the first paragraph of the charge in the instant case correctly instructed the jury that the offense was alleged to have been committed from on or about September 1, 2007, through November 21, 2011. Lastly, the trial court included in the charge as Paragraph 11 the following limiting instruction in the precise language requested by Appellant:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed[,] and even then[,] you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity of the defendant or absence of mistake or accident, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

*See Kuhn*, 393 S.W.3d at 530 (considering trial court's use of detailed limiting instruction in jury charge concerning evidence of uncharged offenses or bad acts). Our reading of the charge as a whole weighs against a conclusion that Appellant was denied a fair and impartial trial. *See id.*

### Argument of Counsel

Based on our review of the arguments of counsel, we note that the prosecuting attorney emphasized the long term nature of Appellant's sexual abuse of F.G. However, during his closing argument, he sought briefly to denote the distinction between the charged acts and the acts occurring outside the time frame as follows:

> When did it begin? 2006. And, see, you're entitled to know about everything. You're entitled to know about when it started and when it ended, because it shows his intent, it shows his common scheme and plan, it shows his motivation. And, you know, motivation is real simple. For a child molester, for a filthy child molester, real simple: It's a kid, fair game, period. And it goes to establish, you know, his state of mind.
>
> So that's why you're entitled to know about the start date and the end date.

8

Previously, during voir dire, the prosecuting attorney gave the jury a more specific explanation of the requirements for convicting Appellant as charged. There, he informed the venire panel as follows:

> We have to prove that the defendant was older than 17. We have to prove that the victim was younger than 14. And we have to prove that it was [F.G.]
>
> And all that's required is that we prove two or more acts from a duration of 30 days or more, okay? If you have one act on day one and one act on day 31, done. Between September the 1st, 2007 through November the 21st, 2011. . . .
>
> . . . .
>
> I've just got to show you two acts between September the 1st 2007, and November the 21st, 2011, and they've got to be over 30 days apart.

Finally, during closing argument, the prosecuting attorney directed the jury's attention to the effective date of the statute, the correctly worded application paragraph, and the significance of the dates alleged in the indictment. He informed the jury that

> [w]e have to prove that the defendant, whom she identified, had sex with her, had continuous sex with her from September the 1st of 2007 through November the 21st, 2011.
>
> And let me tell you what the evidence shows. The evidence shows that he began preying on her innocence in 2006, okay? It never ended. It never ended until March of 2012. She told -- she gave her outcry on March the 5th of 2012. So what is important here -- when you look at September 1st of 2007, okay, and ending November the 21st of 2011, there are several elements that are met here. And why these dates are important is because of this: On September the 1st of 2007, that's when the statute was enacted. So all the acts that occurred -- every time -- twice a week, you do the math -- he committed the offense of aggravated sexual assault of a child from 2006 to 2012 hundreds and hundreds and hundreds of times on her.
>
> . . . .
>
> So he was sexually penetrating her with his penis, with his fingers, from 2006 through 2012.
>
> Now, why stop at November the 21st, 2011? Well, that's her -- the next day is her birthday. See, she turns 14 after 2011. So right here she's under the age of 14, and he's obviously over the age of 17.
>
> . . . .
>
> Did he rape her in Smith County, Texas? Absolutely.
>
> Is his name Cesar Gomez? Yes, it is.
>
> Did he rape her for a duration of 30 days or more between September the 1st, 2007 through November the 21st, 2011? Yes, he did.

Is he older than 17? Yes, he is.

Did he do it two or more times? Absolutely, period.

In *Kuhn*, the court considered a similar set of circumstances. *See id.* at 530–31. However, unlike the facts of the instant case, when the prosecuting attorney in *Kuhn* emphasized instances of sexual abuse that occurred prior to the enactment of the statute, he did not make any effort to denote for the jury the distinction between the charged acts and the acts occurring outside the time frame. *See id.* at 531. Nonetheless, the court concluded that this factor did not weigh heavily in favor of finding egregious harm because (1) there were multiple other instances where the prosecuting attorney informed the jury of the correct time frame it should consider, (2) the abuse that occurred prior to the effective date of the statute could permissibly be considered by the jury as circumstantial evidence of the abuse that occurred after the effective date of the statute, and (3) the jury charge contained a limiting instruction prohibiting the jury from considering the uncharged abuse for impermissible purposes. *See id.* Accordingly, we likewise conclude that the State's emphasis in its argument to the jury of the long term period of sexual abuse does not weigh heavily in favor of our concluding that Appellant was denied a fair and impartial trial.

### The State of the Evidence

The jury heard substantial evidence that Appellant regularly sexually abused F.G. from 2006 until March 5, 2012. F.G. testified that Appellant sexually abused her at least twice per week during this time frame. F.G. did not provide specific date references in her testimony. But her statements were clear that Appellant regularly sexually abused her during this time frame. And although Appellant objected to testimony concerning his sexually abusing F.G. before the effective date of the statute, her testimony concerning whether he sexually abused her during the relevant period was not heavily contested.

Among Appellant's defensive theories at trial was his assertion that his sexual abuse of F.G. was limited to a handful of regrettable encounters as a result of his being intoxicated. Specifically, Appellant stated to investigators that this abuse was infrequent over a six month period in late 2011 through early 2012.[9] But similar to F.G.'s testimony, Appellant failed to provide any specific date references.

---

[9] Appellant made this statement during his interview on March 5, 2012.

10

The jury was entitled to disbelieve Appellant and rely on F.G.'s testimony alone to determine the time period of her abuse. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014) (conviction under Penal Code, Chapter 21 is supportable on uncorroborated testimony of child victim alone); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.). Or, it could have considered the fact that Appellant's purported timeline overlaps the relevant time period, albeit only by a couple of months. And although the jury could not lawfully convict Appellant for continuous sexual abuse based on his conduct prior to September 1, 2007, or after November 21, 2011, it could consider this conduct as circumstantial evidence of Appellant's conduct between September 1, 2007, and F.G.'s fourteenth birthday. *See Martin*, 335 S.W.3d at 876.

Based on our review of the record, we cannot conclude that the jury was unable to infer that at least two acts of abuse occurred between September 1, 2007, and November 21, 2011, simply because the State did not elicit more detailed testimony from the child victim. *See Kuhn*, 393 S.W.3d at 529. Therefore, we conclude that the state of the evidence in the instant case weighs heavily against a conclusion that Appellant was denied a fair and impartial trial. *See id.*

### Summation

Having considered the entirety of the jury charge, the argument of counsel, and the state of the evidence, we conclude that these factors, considered together, do not weigh in favor of a conclusion that Appellant was denied a fair and impartial trial. Accordingly, we hold that Appellant did not suffer egregious harm.

Appellant's fifth issue is overruled.

## INDICTMENT

In his sixth, seventh, and eighth issues, Appellant argues that the trial court committed various errors stemming from its attempt to amend the indictment. Specifically, Appellant contends that (1) the trial court erred in proceeding to trial on an indictment that did not allege continuous abuse, (2) erred in submitting continuous abuse to the jury when it was not alleged in the indictment, and (3) erred in failing to construe the verdict as a conviction for aggravated sexual assault of a child.

11

## Governing Law

A criminal defendant is guaranteed the right to know the allegations against him contained in an indictment returned by a grand jury and to have a copy of the indictment. TEX. CONST. art. I, § 10. An indictment vests the trial court with jurisdiction and provides the defendant with notice of the offense with which he is charged so that he may prepare, in advance of trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000); *Westmoreland v. State*, 174 S.W.3d 282, 286 (Tex. App.–Tyler 2005, pet. ref'd).

Texas Code of Criminal Procedure, Article 28.10 prescribes the following procedure for amending an indictment:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date of the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

. . . .

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10(a), (c) (West 2006). All amendments of an indictment or information must be made with leave of the court and under its direction. *Id.* art. 28.11.

Prior to 2000, the recognized procedure for amending an indictment required the state to either return to the grand jury to obtain a subsequent indictment or request an amendment of the indictment through a motion to the court. *Westmoreland*, 174 S.W.3d at 286. The motion to amend the indictment, taken together with the trial court's granting of the motion to amend and signing the order on the amendment, comprised the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10. *See Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim. App. 1992). The *Ward* court noted that "amend" means an actual alteration of the charging instrument itself. *Id.* The amendment, then, was the actual alteration of the charging instrument. *Id.* Consequently, where the State moved to amend the indictment and the trial court granted the motion, the court physically interlineated the changes on the original indictment. *See id.* at 793–94.

In 2000, the court of criminal appeals addressed whether it was necessary to physically interlineate the changes in order to amend an indictment. *See Riney*, 28 S.W.3d at 564. In *Riney*,

12

the court overruled *Ward* and the cases relying on it, to the extent they required physical interlineation of the original indictment as the only means to amend an indictment. *See id.* at 566. The court emphasized that the amended indictment was where the defendant could find notice of the specific charges against him in order to prepare his defense. *Id.* Therefore, the court held, the "physical interlineation of the original indictment is an acceptable, but not the exclusive means," of amending an indictment. *Id.* at 565–66.

## Amendment of the Indictment

In the case at hand, the original indictment alleged that the offense commenced on or about August 15, 2007. On November 2, 2012, the State filed a motion to amend the indictment to change the beginning date of the alleged offense to September 1, 2007. The trial court orally granted the State's motion at a pretrial hearing on February 1, 2013. Appellant did not object to the proposed amendment during the hearing. The trial court signed a written order granting the motion later that day. On Saturday, February 2, 2013, the trial court interlineated the indictment to change the beginning date of the offense to September 1, 2007. The interlineated indictment was forwarded to this court as part of a supplemental clerk's record. *See, e.g., Bolton v. State*, No. 06-11-00268-CR, 2012 WL 5507404, at *5 n.1 (Tex. App.–Texarkana 2012, Nov. 14, 2012, pet. ref'd) (mem. op., not designated for publication). Further, the prosecuting attorney read the amended indictment into the record before the jury at the outset of trial, and Appellant entered his plea of "not guilty" to the amended indictment without making an objection. *See, e.g., Barrera v. State*, 321 S.W.3d 137, 145 (Tex. App.–San Antonio 2010, pet. ref'd). Further still, the court's charge tracked the amended indictment. *See id.* And although the jury stated in its verdict that it found Appellant "guilty" as charged "under the indictment" rather than "under the [*amended*] indictment," it is reasonable to conclude that the jury was acting in accordance with the description of the offense as charged in the amended indictment based on the introductory paragraph in the charge setting forth the indictment allegations consistent with the amended indictment. *Cf. Murphy v. State*, 44 S.W.3d 656, 665 (Tex. App.–Austin 2001, no pet.) (purpose of jury charge is to inform the jury of applicable law and guide it in application of law to case; absent evidence to contrary, we presume jury followed law provided by charge). Moreover, Appellant never filed a motion to quash the amended indictment[10] and did not object to proceeding

---

[10] Appellant filed a motion to quash the original indictment at some point in 2012. That motion is included in a supplemental clerk's record. The basis of this motion is unrelated to the alleged date on which the offense

to trial based on the amended indictment. *See, e.g., Barrera,* 321 S.W.3d at 145. Finally, it is apparent that Appellant had actual notice of the proposed amendment to the indictment well in advance of trial, never objected to the amendment, and was tried and convicted on the amended indictment. *See id.*

Based on the foregoing, we conclude that the record supports that an effective amendment was made to the indictment to allege continuous sexual abuse. *See id.* Accordingly, we hold that the trial court did not err in proceeding to trial on this amended indictment, in submitting continuous sexual abuse to the jury on that basis, or in rendering the verdict as a conviction based on the allegations in the amended indictment. Appellant's sixth, seventh, and eighth issues are overruled.

## JUDGMENT NUNC PRO TUNC

In his ninth issue, Appellant argues that the trial court's judgment nunc pro tunc is void because he had already filed his notice of appeal. In his tenth issue, Appellant argues that the judgment nunc pro tunc improperly corrected a judicial error. In his eleventh issue, Appellant contends that the trial court violated his right to due process by changing the date of the offense in its judgment nunc pro tunc without Appellant's being present.

The trial court signed its judgment on February 6, 2013. That judgment set forth that the offense commenced on August 15, 2007. On February 26, 2013, the trial court entered a judgment nunc pro tunc, without Appellant's being present, in which it revised the date of the offense to September 1, 2007.

### Governing Law

The Latin phrase "nunc pro tunc" means "now for then" and describes the inherent power a court possesses to make its records speak the truth. *Smith v. State,* 15 S.W.3d 294, 298 (Tex. App.–Dallas 2000, no pet.). In other words, use of a judgment nunc pro tunc permits the court to correct now what the record reflects had already occurred at a time in the past. *See Silva v. State,* 989 S.W.2d 64, 66 (Tex. App.–San Antonio 1998, pet. ref'd); *State v. Garza,* 824 S.W.2d 324, 325 (Tex. App.–San Antonio 1992, pet. ref'd).

The purpose of a nunc pro tunc order is to correctly reflect in the records of the trial court the judgment it actually made, but which for some reason was not entered of record at the proper

---

commenced. Rather, it is based on Appellant's contentions that evidence relied upon by the State supports that any offense committed by Appellant occurred after F.G.'s fourteenth birthday.

time. *Smith*, 15 S.W.3d at 298; *Creeks v. State*, 807 S.W.2d 853, 854 (Tex. App.–Dallas 1991, pet. ref'd), *overruled on other grounds*, *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.–Dallas 1991, pet. ref'd). Therefore, before a judgment nunc pro tunc may be entered, there must be proof the proposed judgment was actually rendered or pronounced at an earlier time. *See Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007); *Jones v. State*, 795 S.W.2d 199, 201 (Tex. Crim. App. 1990); *Wilson v. State*, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984); *Dickson v. State*, 988 S.W.2d 261, 263 (Tex. App.–Texarkana 1998, pet. ref'd); *Garza*, 824 S.W.2d at 325. A judgment nunc pro tunc is improper when it has the effect of making a new or independent order. *Smith*, 15 S.W.3d at 299 (citing *Ex parte Dickerson*, 702 S.W.2d 657, 658 (Tex. Crim. App. 1986)). The nunc pro tunc entry may be made to correct a judgment to properly reflect the actual order but may not be used to modify or add provisions to an order previously entered. *Smith*, 15 S.W.3d at 299. A correction can be made to reflect what actually happened at trial by entry of a nunc pro tunc judgment, "but correction can be only as to what was done and not as to what should have been done." *Ex parte Dopps*, 723 S.W.2d 669, 671 (Tex. Crim. App. 1986); *Chaney v. State*, 494 S.W.2d 813, 814 n.1 (Tex. Crim. App. 1973).

A judgment nunc pro tunc may correct only clerical errors in a judgment, not judicial omissions or errors. *State v. Gobel*, 988 S.W.2d 852, 853 (Tex. App.–Tyler 1999, no pet.); *Jiminez v. State*, 953 S.W.2d 293, 295 (Tex. App.–Austin 1997, pet. ref'd). A clerical error is defined as one that does not result from judicial reasoning or determination. *See Collins*, 240 S.W.3d at 928; *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994). Whether the error is judicial or clerical depends on the nature of the error, not on who made the error. *Jiminez*, 953 S.W.2d at 295; *Curry v. State*, 720 S.W.2d 261, 262 (Tex. App.–Austin 1986, pet. ref'd). Thus, the correction of a clerical error is only a process to insure that the record truthfully reflects what actually occurred. This "correction process" does not allow for or permit readjudication or the reopening of a controversy. *Smith*, 15 S.W.3d at 299. The determination of whether an error is clerical or judicial in nature is a question of law. As such, the trial court's findings and conclusions are not binding on an appellate court. *Id.*

**Propriety of Judgment Nunc Pro Tunc**

In the instant case, in its judgment nunc pro tunc, the trial court changed the date of the offense from August 15, 2007, to September 1, 2007. By changing the date of the offense, the trial court's judgment correctly reflected in the records of the trial court the judgment it actually

15

rendered. As set forth previously, the amended indictment set forth the commencement date for the charged crime as September 1, 2007. This commencement date for the offense was read to Appellant before the jury at the outset of trial and is set forth in the court's charge. The jury found Appellant "guilty" of continuous sexual abuse of a child under fourteen years of age based on this amended indictment, and the trial court pronounced Appellant's "guilt" and his sentence for this offense on the record. Accordingly, we hold that the trial court's judgment nunc pro tunc served to correct a clerical error. Appellant's tenth issue is overruled.

## Timeliness of Judgment Nunc Pro Tunc

Appellant filed his notice of appeal on February 6, 2013. The trial court entered its judgment nunc pro tunc on February 26, 2013. The entry of a nunc pro tunc order prior to the date that the appellate record is filed does not present error. *See Ware v. State*, 62 S.W.3d 344, 353–54 (Tex. App.–Fort Worth 2001, pet. ref'd); *see also Perkins v. State*, 505 S.W.2d 563, 564 (Tex. Crim. App. 1974); *cf.* TEX. R. APP. P. 25.2(g) (in a criminal case, once record has been filed in appellate court, all further proceedings in trial court—except as provided otherwise by law or these rules—will be suspended until trial court receives appellate court mandate).

Here, the trial court's judgment nunc pro tunc was entered prior to the filing of the appellate record. Accordingly, we hold that it was not untimely. Appellant's ninth issue is overruled.

## Ex Parte Change to Judgment Nunc Pro Tunc

The purpose of a nunc pro tunc order is to have the court records correctly reflect a judgment actually rendered by the trial court. *Lancaster v. State*, 324 S.W.3d 217, 228 (Tex. App.–Waco 2010, pet. ref'd); *see Jones v. State*, 795 S.W.2d 199, 202 (Tex. Crim. App. 1990); *McGinnis v. State*, 664 S.W.2d 769, 770 (Tex. App.–Amarillo 1983, pet. ref'd). The court of criminal appeals has said that before any unfavorable nunc pro tunc orders are entered, the person convicted should be given an opportunity to be present for the hearing and represented by counsel in order to accord him due process of law. *See Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976). But in a subsequent opinion, the court has stated that if the trial court properly changed its order, remanding for a hearing would be a "useless task." *Homan v. Hughes*, 708 S.W.2d 449, 454–55 (Tex. Crim. App. 1986); *Lancaster*, 324 S.W.3d at 218.

In the instant case, assuming arguendo that the clerical correction made by the trial court in its judgment nunc pro tunc was "unfavorable" to Appellant, we hold that remanding the matter

16

for a hearing regarding this proper change to the judgment would be a "useless task." *See Homan*, 708 S.W.2d at 454–55 (Tex. Crim. App. 1986); *Lancaster*, 324 S.W.3d at 218; *see also Popp v. State*, No. 10-03-00263-CR, 2004 WL 2306635, at \*1–2 (Tex. App.–Waco Oct. 13, 2004, pet. ref'd (mem. op., not designated for publication). Appellant's eleventh issue is overruled.

## *MIRANDA* WARNINGS

In his twelfth issue, Appellant argues that the trial court erred in finding at the hearing on his motion to suppress that the interrogator complied with the oral confession statute when he told Appellant that his right to appointed counsel did not become effective until after he was interviewed.

### Standard of Review

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Elizondo v. State*, 382 S.W.3d 389, 393 (Tex. Crim. App. 2012). When the trial court's findings of fact are based on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's determination of facts that are supported by the record. *Id.* We review de novo the trial court's application of the law to the facts and uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *Id.* at 393–94 (citing *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000)).

### Preservation of Error

The State argues that Appellant failed to raise this specific contention in his written motion to suppress or during his argument to the trial court on his motion to suppress. Where a motion to suppress makes broad arguments under the confession statute[11] and otherwise fails to bring the specific matter to the trial court's attention that an appellant later seeks to raise on appeal, error is not preserved. *See Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). Moreover, when considering argument on a motion to suppress, "a complaint that could, in isolation, be read to express more than one legal argument will generally not preserve all potentially relevant arguments for appeal." *Id.* Only when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved. *Id.*

In the instant case, Appellant argued in his motion to suppress, in pertinent part, as follows:

---

[11] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014).

17

2. The actions of the Tyler Police Department violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth[,] and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

3. Any statements obtained from Cesar Gomez were obtained in violation of Article 38.22 of the Texas Code of Criminal Procedure and in violation of the rights of Cesar Gomez pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution [and] Article I, Sections, 9, 10[,] and 19 of the Constitution of the State of Texas.

At trial, Appellant urged his motion to suppress and stated the basis of his argument as follows:

Judge, just so we can expedite this, what I'm going to do is urge the motion. I'm going to tell the Court that I believe that there are indications on what the State's going to admit into evidence that Mr. Gomez had -- was asked about drinking, he indicated he had been drinking; he'd been drinking a lot. And I believe that -- and I'm going to urge the motion based on him not being aware of what he was doing when he waived his Miranda rights.

Appellant's written motion to suppress is insufficient in itself to preserve for appeal the specific argument that Roberts told Appellant that his right to appointed counsel did not become effective until after he was interviewed. *See id.* Article 38.22 contains a number of subsections that could have been applicable to Appellant's videotaped statement. *See id.* And Appellant's statements at the hearing on the motion to suppress did nothing to bring the trial court's attention to the issue he now seeks to raise. Therefore, we hold that Appellant failed to preserve error because his argument to the trial court does not comport with the argument he now makes on appeal. *See id.*; *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (defendant's appellate contention must comport with specific assertions made in motion to suppress; motion to suppress stating one legal theory may not be used to support different legal theory on appeal); *see also* TEX. R. APP. P. 33.1.

## *Miranda* Warnings not Vitiated by Subsequent Erroneous Statement

Even if we assume arguendo that Appellant preserved the issue he now seeks to raise, the outcome would not change. At the interview, Tyler Police Officer Edgar Zapata, a translator, gave Appellant his *Miranda* warnings[12] in Spanish. At the hearing on Appellant's motion to suppress, Zapata testified that he gave Appellant his *Miranda* warnings and Appellant understood what was said to him. Zapata further testified that Appellant waived his *Miranda* rights, and

---

[12] *See Miranda v. Arizona*, 384 U.S.436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

18

agreed to be interviewed. Zapata stated that Appellant understood what he was doing when he waived his *Miranda* rights.

The basis of Appellant's argument concerns Roberts's statement after Appellant had been read his *Miranda* rights. Specifically, Roberts asked Zapata to tell Appellant that "a lawyer can be appointed for him by the court at a later time." However, in the next breath, Roberts stated, "If he wants to continue speaking to us without an attorney—and it's entirely his choice—he can stop at any time he becomes uncomfortable." Roberts next asked if the translator was confident Appellant understood his rights and was "okay continuing without an attorney understanding that he can stop at any time." The translator relayed the message to Appellant, who responded, "Yes, why not?"

The addition of an erroneous statement does not vitiate an otherwise correct *Miranda* warning. *United States v. Harrell*, 894 F.2d 120, 125 (5th Cir. 1990). The test of whether *Miranda* has been satisfied is whether the warning reasonably conveys to a suspect his rights. *Id.* (citing *Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S. Ct. 2875, 2880, 106 L. Ed. 2d 166 (1989)). In *Duckworth*, the Court scrutinized a warning that met *Miranda's* basic formula, but in the context of an additional statement that "[w]e have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Id.*, 492 U.S. at 197–98, 109 S. Ct. at 2877. The Court held that the superfluous language did not render an otherwise valid warning defective. *Id.*, 492 U.S. at 201, 109 S. Ct. at 2879. That is to say, there is not one singularly correct form of *Miranda* warnings. *Harrell*, 894 F.2d at 125.

Here, the record indicates that Zapata reasonably conveyed the *Miranda* warnings to Appellant. Even if we overlook the fact that Roberts immediately clarified his erroneous statement, the addition of this erroneous statement does not require suppression of Appellant's statements given in the interview. *Id.*

Appellant's twelfth issue is overruled.


### ISSUES THIRTEEN AND FOURTEEN WITHDRAWN AS MOOT

In his thirteenth issue, Appellant argues that he is entitled to a new trial if the video of his confession remains unviewable. In his fourteenth issue, Appellant argues that he is entitled to a new trial if the file marked copy of his motion to quash cannot be included in the record.

In his reply brief, Appellant elected to withdraw his thirteenth issue if the video of his interview with investigators submitted by the State as part of a supplemental clerk's record was viewable in addition to the audio. After installing a video codec supplied by the State in conjunction with this video evidence, we were able to view the video along with the audio of Appellant's interview.

Additionally, in his reply brief, Appellant agrees to withdraw his fourteenth issue because a stipulated copy of his Motion to Quash and Exception to Substance of Indictment was included in a supplemental clerk's record.

Because Appellant has withdrawn these issues, we do not address them. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Appellant's issues one through twelve, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered January 21, 2015.
*Panel consisted Worthen, C.J., and Hoyle, J.*

(PUBLISH)

20